PER CURIAM.
This is a lawyer disciplinary proceeding in which the respondent, Gene Flinn, petitions for review of the referee’s findings of fact and his recommendation of disbarment. We have jurisdiction. Art. V, § 15, Fla.Const. We approve the referee’s findings, and we determine that disbarment is the appropriate discipline in this case.
The seven-count complaint against Flinn charged him with acts which occurred before January 1, 1987, in violation of the Disciplinary Rules of the Code of Professional Conduct, and acts which occurred after January 1, 1987, in violation of the Rules Regulating The Florida Bar, adopted effective January 1, 1987. See The Florida Bar re Rules Regulating The Florida Bar, 494 So.2d 977 (Fla.1986).
These incidents occurred in Dade County, and a Dade County grievance committee made appropriate findings of probable cause. A judicial officer in Broward County was appointed as referee to hear this cause, and the final hearing before the referee was held in Broward County. The respondent challenges the venue of that hearing. We agree with the referee that, under the record and the circumstances of this cause, the respondent waived his claim of improper venue.
The following are the findings of fact and recommendations of guilt as articulated by the referee in addressing each of the seven counts in this complaint.
As to count I, the referee found:
Mr. Gene Flinn was representing Mrs. Mattie Bohannon in the filing of a claims bill before the Florida legislature for the 1987 Florida legislative session. Although Mr. Flinn had been informed by Mrs. Bohannon and her lawyer, Steven Hall, and Ronald Buschbom (co-counsel with Mr. Flinn) that he had been discharged as counsel in the claims matter, Mr. Flinn continued to hold himself out as Mr. and Mrs. Bohannon's attorney in the claims matter and continued to interfere with the claims bill.
Consistent with this finding, the referee recommended that Flinn be found
guilty of violating Rule 4-1.16(a)(3) of the Rules Regulating The Florida Bar, to wit: lawyer shall not represent a client or, where representation has commenced, shall withdraw from representation of a client, if the lawyer is discharged.
As to count II, the referee found that on or about August 25, 1986, Mr. Flinn and his co-counsel received $27,869.40 for costs in a medical malpractice case. During March and April, 1987, Mr. Flinn was requested to provide an itemized statement for his portion of the costs, which was $19,700. However, Mr. Flinn failed to provide a timely or accurate accounting.
Mr. Flinn called a Dr. Ira Mitzner as one of his witnesses. During questioning of Dr. Mitzner, it was established that Dr. Mitzner is a chiropractor and he never treated Edwin Bohannon. However, he submitted a statement dated March 25, 1988, years after the services were allegedly performed, which shows *636 that he charged several thousand dollars for reviewing Edwin Bohannon’s medical records and for consultation fees. Dr. Mitzner testified that he was going through a nasty divorce at the time and he asked Mr. Flinn to pay him in cash (presumably to hide his assets from his wife and from the judge handling his divorce). Mr. Flinn allegedly paid Dr. Mitzner in cash.
The doctor also testified that the baby (who was the victim in a medical malpractice case) had a perforated large bowel and small bowel. Mr. Buschbom testified that Edwin Bohannon was a premature baby and had developed Necrosis Enteritis, which causes the intestines to die. It’s a disease of infants.
The accounting submitted by Mr. Flinn shows that he incurred $3,000 in costs for payment to Dr. Mitzner. Neither Dr. Mitzner nor Mr. Flinn presented any record of the number of hours allegedly spent or on what days the records were allegedly reviewed or when the money was paid.
Ronald Buschbom testified, and I believe, that it was impossible for Dr. Mitz-ner to have done anything beneficial to the Plaintiff in the medical malpractice case. Mr. Buschbom testified that he had all of the medical records and Dr. Mitzner never reviewed them. In addition, he stated, according to Florida Statute 768.45, Medical Neglect Standards of Recovery, Dr. Mitzner could not testify in the medical malpractice case, as only a medical doctor experienced in treating babies would be qualified to testify and Dr. Mitzner is a chiropractor. Moreover, Dr. Mitzner was not listed on the pre-trial catalog, which Flinn prepared.
Based upon the evidence, it is clear and convincing that Dr. Mitzner’s statement for charges was false, his testimony was pure fabrication, and that Mr. Flinn’s itemization of costs (at least as it concerned Dr. Mitzner) was also false.
(Citations omitted.)
Consistent with these findings, the referee recommended that Flinn be guilty of the following violations:
Disciplinary Rule 9-102(B)(3) of the Code of Professional Responsibility, to wit: a lawyer shall maintain complete records of all funds, securities and other properties of a client coming into [the] posséssion of the lawyer and render appropriate accounts to his client regarding them.
Disciplinary Rule 2-106(E), Code of Professional Responsibility, to wit: the attorney shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating attorney;
Rule 4 — 1.5(f)(5), Rules Regulating The Florida Bar. Charging an illegal or clearly excessive fee;
Rule 5-1.1, Rules Regulating The Florida Bar, to wit: Trust accounting rule.
The referee also stated:
Although the respondent was not specifically charged with violating Rule 4-8.-4(c), Rules Regulating The Florida Bar, the evidence elicited from Dr. Mitzner during cross-examination, plus other evidence, makes it clear and convincing, no, beyond any reasonable doubt, that the respondent violated Rule 4-8.4(c) of the Rules Regulating The Florida Bar, to wit: engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.
Therefore, this was considered relevant to the discipline to be imposed, The Florida Bar v. Stillman, 401 So.2d 1306 (Fla.1981) and The Florida Bar v. Setien, 530 So.2d 298 (Fla.1988).
(Citations omitted.)
As to count III, the referee found:
At a grievance committee hearing on March 22, 1988, Mr. Flinn offered into evidence a copy of an affidavit dated April 26, 1985, signed by Mattie and William Bohannon. Added to the affidavit were the words, “and employ Gene Flinn and Bob Levy, exclusively, to pursue a claims bill to conclusion.”
While the evidence shows that the affidavit was signed by Mattie and William Bohannon, I find that the words described above were added to the affidavit *637 by Mr. Flinn or at his instruction, without the prior knowledge or consent of Mattie or William Bohannon. On April 26, 1985, Mrs. Bohannon did not know Bob Levy. Also, on April 26, 1985, the date the above-mentioned affidavit was signed, the relationship between Mr. Flinn and Mr. Buschbom was very good and there was no reason for hiring a lobbyist at that time.
(Citations omitted.)
Consistent with these findings, the referee recommended that Flinn be found
guilty of Rule [4.8-4(c)] of the Rules Regulating The Florida Bar and Disciplinary Rule 1-102(A)(4), Code of Professional Responsibility, to wit: conduct involving dishonesty, fraud, deceit or misrepresentation.
As to count IV, the Bar alleged that Mrs. Bohannon was paid $150 for signing a typed statement that it was her desire to dismiss any complaints against Flinn. The referee found that, although there was evidence tending to support this allegation, “the evidence concerning this matter was not clear and convincing,” and the referee recommended that respondent be found not guilty of count IV.
As to count V, the referee found:
Mr. Flinn represented Marie Nieto in a workers’ compensation case before Judge John G. Tomlinson, Jr. During July 1986, Judge Tomlinson denied all claims. This result was due to the lack of preparation, neglect and incompetence of Mr. Flinn. During 1986, Mr. Flinn represented Timothy Moore before Judge Tomlinson. Although Mr. Moore’s mother testified that the problems in the case were caused by Judge Tomlinson, Dr. Arthur T. Stillman, a psychiatrist, testified that it was the incompetent manner in which Mr. Flinn handled the Timothy Moore case that led him to notify The Florida Bar concerning Mr. Flinn’s incompetence.
The evidence concerning Mr. Flinn’s incompetence as an attorney was clear and convincing. While the complaint refers to Mr. Flinn’s incompetence between 1986 and 1987, the evidence was not limited to that time frame. The evidence shows that Mr. Flinn repeatedly failed to properly prepare cases, failed to ask proper questions and to address proper issues, continued to ramble and to make little sense, which caused inordinate delays in proceedings.
The deposition of Dr. Stillman, 6/7/89, contains examples of Mr. Flinn’s incompetence.
In addition, the credible testimony by attorneys Robert Gregory and Steven Kronenberg, clearly describe Mr. Flinn’s incompetence in the area of worker’s compensation law. Furthermore, the testimony of the following worker’s compensation judges clearly and convincingly establish Mr. Flinn’s incompetence as an attorney to wit: John Tomlinson, Jr., William Johnson, Judith Nelson and Alan Kuker.
In addition to the testimony of the worker’s compensation judges, and lawyers, my personal observations of Gene Flinn’s incompetent manner in handling his own case, convinces me, clearly and convincingly that he is incompetent as a lawyer. The deficiencies pointed out by the worker’s compensation judges and The Florida Bar witnesses were apparent in Mr. Flinn’s handling of his case. Throughout these proceedings, Mr. Flinn created unnecessary delays, or showed general incompetence as follows: by asking repeated irrelevant and immaterial questions; by asking improper questions on direct and on cross; by rambling without any valid reason; by alleging that there is a conspiracy or many conspiracies against him; by retaining a lawyer and then insisting on taking his own depositions, rather than have the lawyer take them — even after he agreed to let retained counsel act as lead attorney; by attempting to introduce volumes of irrelevant documents into evidence; by filing what can only be characterized as bizarre motions such as his motion to refer matters to a grand jury and motion to file a counter-claim against The Florida Bar; by filing a written closing argument that rambles and makes little sense; by filing *638 motions for pre-trial conference after 4:00 p.m., two days before the November 18, 1988 scheduled trial date; and by filing irrelevant documents that do nothing but clutter the file.
If this were a criminal proceeding and Mr. Flinn were counsel for the accused, and if he would have represented the accused in the same manner that he represented himself, any conviction would have to be set aside for ineffective assistance of counsel. Due to Mr. Flinn’s conduct, the final hearing took six days to complete.
In part, because of the poor manner Mr. Flinn represented clients before the worker’s compensation judges, they re-cused themselves from hearing his cases. Apparently, this act was unprecedented. Mr. Flinn called a number of very excellent witnesses to testify as to his competence. However, a careful review of their testimony shows that they do not practice worker’s compensation cases before them or have not had any recent cases before them.
(Citations omitted.)
Consistent with these findings, the referee recommended that Flinn be found
guilty of the following violations of the Disciplinary Rules of the Code of Professional Responsibility: 1-102(A)(6) conduct that adversely reflects on his fitness to practice law; 6-101(A)(2) handling a legal matter without preparation adequate in the circumstances and 6-101(A)(3), neglect of a legal matter.
Since there was clear and convincing evidence showing incompetence and lack of diligence after January 1, 1987, the effective date of the Rules Regulating The Florida Bar, I recommend the respondent also be found guilty of the following rules of the Rules Regulating The Florida Bar: Rule 4-1.1 and 4-1.3 (See The Florida Bar v. Stillman, 401 So.2d 1306 (Fla.1981)).
As to count VI, the referee found:
The Respondent, Gene Flinn, again showed his incompetence, where he represented Frank Chambers before Deputy Commissioner (now judge) Judith S. Nelson. Instead of appearing at the final hearing, he left an affidavit executed by Mr. Chambers on Judge Nelson’s desk stating that Mr. Chambers could not receive a fair and unbiased hearing due to the prejudice manifested by Deputy Commissioner Nelson. Mr. Chambers and Judge Nelson were at the hearing — Mr. Flinn was not. Mr. Flinn apparently wanted to file a motion to recuse, but it was not legally sufficient, even after the Deputy Commissioner told him to follow the applicable statute and rules.
In addition to three other Deputy Commissioners recusing themselves from hearing Gene Flinn’s cases, Judith Nelson also recused herself from the Chambers’ case.
In addition, Judge Nelson testified concerning Mr. Flinn’s incompetence in worker’s compensation matters. Moreover, I find that Mr. Flinn knowingly made false accusations against Judge Judith Nelson, accusing her of bribery.
Consistent with these findings, the referee recommended that Flinn be found
guilty of Rule 4-1.1, Rules Regulating The Florida Bar, to wit: incompetence.
In addition, there was clear and convincing evidence that respondent made false accusations against Judge Nelson. Therefore, for purposes of discipline, this should be considered. The Florida Bar v. Stillman, supra.
As to count VII, the referee found
by clear and convincing evidence that Mr. Flinn, falsely and knowingly accused the following Deputy Commissioners, (now known as judges) of bribery and corruption: Alan Kuker, John Tomlinson, Jr., William Johnson, Judith NeIson[.]
In addition, see deposition of Gregg Marr, December 8, 1988 wherein the former Department of Law Enforcement agent testified that he contacted witnesses furnished by Mr. Flinn, but their information tended to refute Mr. Flinn’s allegations. There was not one scintilla of evidence presented to support any allega *639 tion of bribery or corruption on the part of any worker’s compensation judges.
(Citations omitted.)
Consistent with these findings, the referee recommended that Flinn
be found guilty and specifically that he be found guilty of violating Disciplinary Rule 8-102(B), to wit: a lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer.
The evidence was clear and convincing that the respondent knowingly made false accusations against Deputy Commissioners Tomlinson, Kuker and Johnson.
In making his recommendation as to the discipline to be applied, the referee judiciously and thoughtfully approached the question of the appropriate discipline. He stated:
I recommend that Gene Flinn, the respondent be disbarred from the practice of law in Florida.
While I realize that disbarment should be used only in most serious cases, it is my view that the protection of the public requires that Gene Flinn be disbarred. I do not make this recommendation lightly. This case is my first experience with disciplinary procedures, either as a lawyer or as a judge. Believe it or not, I have given thought to this case almost daily since November, 1988. It hurts to write negatively about an attorney, but it hurts more to think that conduct such as that demonstrated by Mr. Flinn can be tolerated.
I have considered Florida’s Standards for Imposing Lawyer Sanctions, as follows:
Rule 4.11 — Disbarment is appropriate when a lawyer intentionally or knowingly converts client property, regardless of injury or potential injury.
Rule 4.51 — Disbarment is appropriate when a lawyer’s course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures and the lawyer’s conduct causes injury or potential injury to a client.
Rule 6.21 — Disbarment is appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.
The respondent knowingly and falsely accused at least four worker’s compensation judges of bribery or corruption. It is my opinion this was done for base motives. See the commentary under “commentary” under Rule 6.21 of Florida’s Standards for Imposing [Lawyer Sanctions]. Mr. Flinn’s strategy, whenever he is facing difficulties, seems to be, yell conspiracy. He has claimed, in addition to the worker’s compensation judges, that The Florida Bar, and several attorneys are all out to get him. This is based on nothing.
Rule 5.11(b) — Disbarment is appropriate when a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft.
We-find the findings of fact of the referee are fully supported in this record by clear and convincing evidence. We are unable to add to the reasons articulated by the referee in explaining the appropriateness of the recommended discipline in this cause.
Accordingly, we hold that Gene Flinn is guilty of violating the Disciplinary Rules of the Code of Professional Responsibility and the Rules Regulating The Florida Bar, as set forth by the referee. We direct that Gene Flinn shall be disbarred from the practice of law, and he is hereby enjoined and prohibited from the practice of law in this state, effective March 11, 1991, thereby giving him thirty days to close out his practice. Judgment for costs in the amount of $10,296.05 is hereby entered against Gene Flinn, for which sum let execution issue.
It is so ordered.
*640 OVERTON, A.C.J., and McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
SHAW, C.J., recused.