607 So.2d 394 (1992)
THE FLORIDA BAR, Complainant,
v.
Michael I. ROSE, Respondent.
No. 78001.
Supreme Court of Florida.
September 24, 1992.
Rehearing Denied November 19, 1992.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Paul A. Gross, Bar Counsel, Miami, for complainant.
Michael I. Rose, in pro se, of Michael I. Rose, P.A., Miami, and James F. Pollack of James F. Pollack, P.A., Co-Counsel, Coral Gables, for respondent.
PER CURIAM.
Michael I. Rose, attorney, seeks review of the referee's finding of guilt and recommended discipline. We have jurisdiction. Art. V, § 15, Fla. Const.
After conducting two hearings, the referee made the following findings of fact:
Most of the facts in this case were agreed to and are shown in the stipulation, which is part of the record. A synopsis of the facts is as follows:
Michael Rose, the Respondent, and Janice Revitz were married during 1974. They were divorced during June 1984. Both parties are members of The Florida Bar. Ryan Evan Rose and Darren A. Rose are minor children of Michael and Janice. More than two years after the divorce, the Respondent sold 2,000 shares of common stock, issued by Lance, Inc., for approximately $77,500.00. Respondent used these funds for his personal use. The stock certificates were in the name of Janice Revitz, Custodian for Darren A. Rose and Ryan Evan Rose, Uniform Gift For Minor Act, Florida.
After the divorce, Respondent signed his ex-wife's name to client agreement forms and to the stock certificates. This was done without the ex-wife's authority. (See Stipulation).
During September 1986, Shearson Lehman Brothers issued two checks for $38,750.00 each, in return for the Lance Stock. One check was payable to the order of Janice Revitz Rose, Custodian for Darren A. Rose. The other check was payable to the order of Janice Revitz Rose, Custodian for Ryan Evan Rose. The Respondent signed the name Janice Revitz Rose on the back of each check.
Janice Revitz testified she did not authorize Respondent to sign her name to the checks. Also, Respondent, by Stipulation, agrees with this.
Respondent contends that he did not need his ex-wife's authority to sign her name to the aforementioned documents. Respondent stated that he believed the stock was purchased as a Totten Trust or a revocable trust. Respondent stated he did not know the Uniform Gift For Minors Act created an irrevocable trust. Also, Respondent testified the money used to purchase the Lance Stock was from his funds. The ex-wife stated she did not know where the funds came from. All Funds, with interest, were refunded to the ex-wife, as custodian for *395 the children, by Shearson Lehman as a result of an arbitration award.[[*]] Respondent instituted the arbitration but sought the proceeds for his own account.
It is without question that Janice Revitz did not give any consent to signing her name at the time of the sale or to the sale of the stock. This Referee also finds at the time of the sale, that the wife had no knowledge of the existence of the stock in her name.
The Respondent contends, number one, that he didn't know that a gift under the Uniform Gifts to Minors Act, with his wife as custodian, divested him of any interest in the corpus of the gift, and number two, that his wife had consented to signing her name to other accounts and that he presumed this consent remained in effect, almost two and a half years after the divorce.
In his opening, Respondent contended that the purpose of putting the stock in the children's names was not to get the tax benefit, because he paid the taxes. However, examination of the tax returns shows no evidence of payment of taxes by the Respondent on this property until 1985, which was after the divorce.
The Referee finds that the Respondent knew or should have known that he had no right to sign his wife's name to the account. He knew or should have known that he had no right to utilize the money in the custodial account for his personal benefit.
The referee recommended that Rose be found guilty of violating Disciplinary Rule 1-102(B)(4) (conduct involving misrepresentation) of the former Code of Professional Responsibility and recommended that he be suspended for thirty days.
Rose does not quarrel with the findings of fact but asserts that the facts do not demonstrate that he was guilty of misrepresentation. We reject this argument. Prior to his divorce, Rose created an irrevocable trust for his children with his wife as custodian under the Uniform Gift for Minors Act. After the divorce, without her authority he signed his ex-wife's name to client agreement forms, stock certificates, and checks. As a consequence, he obtained the children's money without authorization of the custodian. The referee could properly find that Rose knew or should have known that he had no right to sign his ex-wife's name to the account and utilize the money in the account for his personal benefit.
Rose also argues that the recommended thirty-day suspension is too severe. However, we are convinced that Rose's conduct adversely reflected on his fitness to practice law. In Florida Bar v. Hosner, 520 So.2d 567 (Fla. 1988), we pointed out that lawyers are held to a higher standard of conduct in business dealings than are nonlawyers and may be disciplined for conduct that is not related to the practice of law. Even in the absence of a prior disciplinary record, the referee's recommended discipline is most appropriate.
Accordingly, we approve the referee's findings and impose a thirty-day suspension. The suspension shall become effective on October 26, 1992, thereby giving respondent time to take the necessary steps to wind up his affairs and protect his clients' interests. Rose shall provide notice to his clients of his suspension and shall accept no new clients from the date of this opinion. Judgment for costs in the amount of $2,090.55 is hereby entered against Rose, for which sum let execution issue.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[*] At the hearing, Rose testified that Shearson Lehman had been made whole as a consequence of the arbitration award.