678 So.2d 1278 (1996)
THE FLORIDA BAR, Complainant,
v.
Raymond E. CRAMER, Respondent.
No. 84716.
Supreme Court of Florida.
August 29, 1996.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and John B. Root, Jr., Bar Counsel and Jan Wichrowski, Co-Bar, Counsel, Orlando, for Complainant.
Raymond E. Cramer, Orlando, pro se.
*1279 PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by Raymond E. Cramer. Cramer petitions for consideration of the referee's findings of fact and recommended discipline. We have jurisdiction. Art. V, § 15, Fla. Const. We approve the referee's findings and determine that disbarment is the appropriate remedy in this case.
The incidents leading to this disciplinary action occurred in Osceola County, but the final hearing was held in Polk County. Cramer alleges that because venue was improper pursuant to Rule Regulating the Florida Bar 3-7.6(c), the matter must be remanded to the referee for a new hearing. The record, however, clearly reflects that Cramer waived his claim of improper venue. See Florida Bar v. Flinn, 575 So.2d 634 (Fla.), cert. denied, 500 U.S. 953, 111 S.Ct. 2259, 114 L.Ed.2d 711 (1991).
Cramer also contends that the referee failed to make the required report because he adopted the proposed findings submitted by the Bar rather than submitting his own report. The record does not support Cramer's contention. Rather, the record reflects that the proposed findings submitted by the Bar were based on the oral findings made by the referee at the conclusion of the disciplinary hearing. The referee, after listening to the evidence presented, announced on the record his findings as to guilt. He then stated that he intended to adopt the allegations of the Bar, as set forth in its complaint, to the extent that those allegations were not inconsistent with his findings as to guilt. Only after announcing these findings did the referee ask the Bar's counsel to prepare proposed findings and submit a copy to opposing counsel. The Bar's counsel submitted the proposed findings as ordered, and Cramer did not object to the findings until after they were signed by the referee. We find no error with respect to the procedure followed by the referee.
This grievance proceeding stems from Cramer's business dealings with FNW Capital, Inc. (FNW). FNW was a wholly owned subsidiary of a bank in Illinois authorized to transact business in Florida. FNW offered financing to individuals or entities interested in purchasing office, computer, and other equipment. One type of financing FNW offered was known as "pure purchase financing." This method of financing required FNW, through a broker, to arrange for a vendor to supply the desired equipment. FNW would then purchase the equipment and lease it to the purchaser/lessee. The purchaser/lessee would make payments under the lease to pay for the purchase.
George Masuck, a broker who had in the past arranged pure purchase financing agreements for FNW, arranged for the two financing agreements which gave rise to these proceedings. We will refer to these agreements as lease 206A and lease 206B or the leases. During the business dealings over the leases, Masuck advised FNW that he was the vendor of the equipment to be leased/purchased. The bill of sale purporting to transfer the equipment to FNW in each transaction indicated that National Office Products (National), one of Masuck's corporations,[1] was the absolute owner of and had full authority to sell the equipment. Additionally, FNW was led to believe that the leases were for the benefit of Duane Owen and that Owen would be making payments to FNW on a monthly basis. Both representations were false.
Although the leases bore Owen's signature as lessee, Cramer actually signed Owen's name to the leases. He contended that he had Owen's oral authorization to execute the leases in Owen's name. In addition, Cramer rather than Owen received the leased computer and office equipment. Cramer testified that he had tried to obtain financing for the equipment from FNW on his own but that FNW rejected his application because two tax liens had been filed against him. He subsequently had Duane Owen submit an application to FNW. The leases were approved on the basis of Owen's application, which included Owen's financial statement reflecting a net worth of approximately $1 million. Cramer thereafter began making payments on the leases.
*1280 On September 4, 1990, Cramer issued a check for $1,685.88 payable to FNW as a deposit on lease number 206A. On September 7, 1990, FNW issued a check to National for $22,089.59 to fund lease 206A. National, in turn, issued a $19,300 check payable to Cramer on September 11, 1990. Cramer made monthly payments of $561.96 to FNW on lease 206A until approximately March 3, 1992. At that time, he ceased to make payments, and the lease went into default.
On November 7, 1990, Cramer paid from his office account the deposit on lease 206B. On November 9, 1990, FNW issued a check to National in the amount of $57,688.79 in order to fund lease 206B. On November 15, 1990, National issued a check for $31,931.19 payable to Owen and/or Cramer. Cramer deposited the check and made monthly payments of $1,406.45 to FNW on lease 206B until January 14, 1992. At that time, Cramer ceased to make payments, and the lease went into default.
After the leases went into default, Cramer attempted to assume all responsibility for the leases by sending an assumption/assignment agreement to FNW. FNW rejected the assumption/assignment agreement and sent demand letters to Owen and Cramer. In response to the letter he received, Owen told FNW that he had not executed or signed the lease documents for leases 206A and 206B. He maintained that the signatures were forgeries. Cramer, contrary to Owen's assertions, maintained that he received Owen's permission to use his name and to sign his name to the leases.
Despite Cramer's offers, FNW filed suit against Cramer and Owen. In preparation for the law suit, FNW requested that Masuck provide a number of documents on lease 206B. Among the documents FNW received was a letter from the actual vendor of the equipment, Godfather's Computer Syndicate (Godfather's). The letter questioned why FNW paid Cramer rather than Godfather's for the equipment. The letter also indicated that Cramer made only one initial $5000 payment on the equipment and failed to use the money he received from FNW to pay the balance owed Godfather's. The letter further stated that in January and February 1991, Cramer negotiated the return of some of the equipment to Godfather's for credit on the outstanding amount he owed them. Additional documents supplied by Masuck confirmed that the equipment shipped to Cramer by Godfather's was the same equipment paid for and secured by FNW.
On December 21, 1992, FNW and Cramer began negotiations to settle the lawsuit filed by FNW. FNW offered to voluntarily dismiss the suit if Cramer paid a total of $81,512.82. Cramer accepted the settlement offer but failed to make the payment. He advised FNW that he was waiting on the delivery of the funds from a foreign bank. On January 11, 1993, FNW informed Cramer that it intended to proceed with the suit.
On January 12, 1993, Cramer made yet another offer to FNW. Cramer stated he would make an immediate $25,000 partial payment and pay the remainder owed on February 2, 1993. Cramer asked FNW to hold the $25,000 payment until February 2, 1993, when the final payment was due. Cramer also agreed to file an answer or responsive pleading on or before that date.
On January 14, 1993, Cramer sent FNW a check for $25,000, but he failed to pay the balance by February 2. After notice to Cramer, FNW negotiated the partial payment. Cramer asked FNW to extend the time he had to obtain the remaining settlement funds and indicated that he was willing to stipulate to the entry of a judgment for that amount. Counsel for FNW prepared a joint stipulation for entry of judgment and forwarded it to Cramer. At that time FNW also voluntarily dismissed Owen from the suit without prejudice. On June 17, 1993, the circuit court entered a final judgment against Cramer for $56,512.82.
On July 9, 1993, The Florida Bar received a complaint regarding Cramer's conduct. The Bar twice asked that Cramer reply regarding the allegations made against him. He failed to respond to either of the Bar's requests, and the matter was forwarded to the grievance committee for review.
Based on the evidence presented at the hearing, the referee found that Owen knew Cramer had used his name on the leases. *1281 The referee concluded, however, that the fact that Owen was aware of the use of his name did not exculpate Cramer. Specifically, the referee found that Cramer as an attorney should have known that he was acting improperly when he signed Owen's name to the leases. Regardless of Owen's awareness of the use of Owen's name, Cramer's conduct was fraudulent misrepresentation. Accordingly, the referee determined that Cramer, by misrepresenting the facts to FNW in order to procure lease 206A and lease 206B, had perpetrated a fraud on a lending institution.
The referee further concluded that no proof was presented that established Masuck was an agent for the bank or that an officer of FNW had authorized the fraudulent financing scheme. The referee noted, however, that even if a conspiring agent or bank officer had authorized the scheme, Cramer's conduct would still violate the Rules of Professional Conduct.
Based on these findings, the referee recommended that Cramer be found guilty of violating the following Rules Regulating The Florida Bar: 3-4.3 (committing an act that is unlawful or contrary to honesty and justice); 4-4.1(a) (making a false statement of material fact or law to a third person in the course of representing a client); 4-8.4(b) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer); and 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The referee also found that Cramer's failure to respond to the Bar's inquiries violated Rule Regulating the Florida Bar 4-8.4(g) (failing to respond in writing to any inquiry by a disciplinary agency when such agency is conducting an investigation into the lawyer's conduct).
Cramer argues that a number of the referee's findings were not supported by or were contrary to the evidence presented. Specifically, Cramer challenges the referee's findings that the bank was not fully apprised of the details of the lease transactions either through Masuck as its agent or through its former president, James Torgenson. Cramer maintains that these men had knowledge of the manner in which the leases were procured and that consequently no misrepresentation occurred.
It is well established that a referee's findings of fact in a disciplinary proceeding are presumed correct and will not be disturbed unless clearly erroneous or without support in the record. Florida Bar v. Canto, 668 So.2d 583, 584 (Fla.1996); Florida Bar v. Davis, 657 So.2d 1135, 1136 (Fla.1995); Florida Bar v. Garland, 651 So.2d 1182, 1184 (Fla.1995). Furthermore, the party challenging the referee's findings of fact carries the burden of demonstrating that they are clearly erroneous or unsupported by the record. Canto, 668 So.2d at 584; Florida Bar v. McClure, 575 So.2d 176, 177 (Fla.1991). We find that Cramer has not met that burden. Although there were conflicts in the evidence with respect to these protracted financial transactions, we believe the record in this case supports the referee's findings of fact. Those findings of fact in turn support the referee's recommendations of guilt.
We also agree with the referee's conclusion that Cramer participated in a fraudulent scheme. Both the use of Owen's name and the misrepresentation as to the equipment were fraudulent acts. It matters not whether other persons were also guilty of fraud; our Rules of Professional Conduct were clearly violated by Cramer's conduct. Accordingly, we approve the referee's findings and recommendations of guilt.
Cramer also challenges the referee's recommended discipline. In making the disciplinary recommendation of disbarment the referee considered in mitigation Cramer's serious health problems, his cooperative attitude during the final hearing, and his admission of uncontested allegations. The referee found, however, that these mitigating factors were outweighed by the applicable aggravating factors. Those factors included his two prior offenses, which like the current offense involved subterfuge in money matters,[2] his failure to respond to the Bar, and his failure to acknowledge that he had done something wrong.
*1282 We approve the referee's recommendation of disbarment. Cramer perpetrated a fraud upon a financial institution. We have in the past recognized that a felony conviction for similar misconduct warranted disbarment. See Florida Bar v. Forbes, 596 So.2d 1051 (Fla.1992). Although Cramer had not been criminally convicted for his actions at the time of this grievance proceeding, we conclude that his total conduct in this incident coupled with his prior disciplinary record evince a pattern of misconduct warranting disbarment. See Florida Bar v. Rood, 620 So.2d 1252 (Fla.1993).
Cramer's disbarment will be effective thirty days from the filing of this opinion so that he can close out his practice and protect the interests of existing clients. If Cramer notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Cramer shall accept no new business from the date this opinion is published. Judgment is entered against Cramer for costs in the amount of $1,632.69, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Masuck served as a shareholder and director of several corporations.
[2] Cramer received a private reprimand on August 23, 1985. Cramer also received a ninety-day suspension for: (1) misusing his trust account in an attempt to avoid an Internal Revenue Service levy; and (2) depositing client funds into his office account and using those funds for office purposes. Florida Bar v. Cramer, 643 So.2d 1069 (Fla.1994).