694 So.2d 725 (1997)
THE FLORIDA BAR, Complainant,
v.
Bruce Ira KRAVITZ, Respondent.
Nos. 84380, 84973.
Supreme Court of Florida.
May 15, 1997.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee; and David M. Barnovitz, Alisa Smith and Kevin P. Tynan, Bar Counsel, Fort Lauderdale, for Complainant.
Daniel N. Brodersen of Dempsey, & Associates, P.A., Winter Park, for Respondent.
PER CURIAM.
We have for review consolidated lawyer disciplinary proceedings in which The Florida Bar seeks review of the referee's recommended discipline and asks that we impose a ninety-one day suspension rather than the referee's recommendation of a one-year probationary period. We have jurisdiction. Art. V, § 15, Fla. Const. We approve the findings of the referee and increase the sanction to a thirty-day suspension from the practice of law.
The Bar's complaint against respondent, a member of The Florida Bar, arose from his representation of Black Moon Investments, Inc. The following account of events leading to the complaint is based upon the referee's findings of fact. Black Moon was sued in 1992 by Hogan's Heros, Inc. The suit alleged that Black Moon's restaurant, known as "Hogan's," infringed upon a registered service mark held by Hogan's Heros, Inc. Respondent represented Black Moon during the infringement litigation. Respondent owned fifty percent of the shares in Black Moon, and Christopher Austin owned the remaining fifty percent. Respondent and Austin were both corporate vice presidents of Black Moon, which had no other official corporate officers. William Mahoney and Bernard Kaiserian were responsible for the day-today operations of Black Moon.
On April 8, 1993, a hearing was held in the Circuit Court in Alachua County on a petition for injunction filed by Hogan's Heros. At the hearing, Black Moon was represented by respondent, and Hogan's Heros was represented by attorney Jack Ross. Circuit Judge Mickle granted the injunction requiring *726 Black Moon to stop using the name "Hogan's" on or before May 15, 1993. On May 18, 1993, a motion for contempt was filed by Hogan's Heros after Black Moon failed to comply with the court order. This motion was called for hearing, and at that time, Circuit Judge Tomlinson presided. At the hearing before Judge Tomlinson, respondent admitted that the Hogan's sign had not been removed. After respondent's admission, Judge Tomlinson asked respondent to identify the person who was responsible for the violation of the April 8, 1993, injunction. Based upon respondent's reply, the court ordered William Mahoney to appear at a time certain or be subject to arrest.
In July 1993, respondent sent a letter to Kaiserian informing him that if Kaiserian did not pay respondent $4000 by a time certain, Judge Tomlinson would have the manager/operator arrested. In Judge Tomlinson's deposition, which was introduced at respondent's Bar disciplinary hearing, the judge stated that he had never suggested that anyone be arrested if payment was not made.
During settlement negotiations, respondent sent a letter to attorney Ross on August 6, 1993, inaccurately stating that respondent's trust fund contained sufficient funds to cover a settlement of attorney fees. Respondent later testified during his disciplinary hearing that the payment of the attorney fee to Ross came from net proceeds from the sale of respondent's business.
The contempt issue proceeded to a hearing before Judge Tomlinson on September 1, 1993, in which Mahoney appeared and testified he was not the day-to-day operator of the Hogan's restaurant. Kaiserian then testified that he, Kaiserian, was the general manager of Hogan's. At the end of the hearing, Judge Tomlinson found Black Moon in contempt for failure to discontinue using the name "Hogan's." Judge Tomlinson also found respondent to be in contempt for having intentionally misrepresented to the court the name of the individual who was responsible for Black Moon's not obeying the injunction. Judge Tomlinson further found that by misrepresenting the identity of the manager, respondent had violated rule 4-3.3(a)(1) (lawyer shall not knowingly make a false statement of material fact or law to a tribunal) of the Rules of Professional Conduct. Judge Tomlinson instructed attorney Ross to deliver a copy of the order to the Bar.
In 1994, after Judge Tomlinson recused himself and Circuit Judge Beauchamp became the presiding judge in the case, respondent submitted to Judge Beauchamp proposed orders vacating respondent's contempt order and granting respondent's motion for rehearing. The cover letter indicated that attorney Ross did not oppose entry of the proposed orders. Judge Beauchamp signed both orders. On August 4, 1994, attorney Ross submitted to Judge Beauchamp a motion to vacate the orders exculpating respondent from contempt and granting a rehearing. Judge Beauchamp vacated the orders, indicating that attorney Ross stated that he never saw respondent's proposed orders and that Ross never authorized respondent to represent Ross's lack of opposition to the orders. The Bar subsequently filed two complaints against Kravitz. The first (No. 84,380) was filed on September 20, 1994, and alleged two counts of misrepresentation. The second (No. 84,973) was filed on January 4, 1995, and alleged an additional count of misrepresentation. The complaints were consolidated before a referee, who filed his report on February 2, 1996, after a hearing.
As to the first count, the alleged presentation of false evidence to the court regarding the identity of the restaurant manager, the Bar charged respondent with violating rules 4-3.3(a)(1) and 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. For the second count, alleged misrepresentation to Kaiserian regarding the $4000 payment, the Bar charged respondent with violating rule 4-8.4(c). Regarding the third count, alleged securing of court orders based upon intentional misrepresentation to the court, the Bar charged Kravitz with violating rules 4-8.4(b) (a lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 4-8.4(c), and 4.8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice) of the Rules of Professional *727 Conduct. The referee found Kravitz guilty of each count in each of the cases.
The referee made the following findings of fact:
Regardless of how the question was actually worded, the evidence is abundantly sufficient to support the conclusion Respondent was not candid with Judge Tomlinson. On June 10, 1993, Judge Tomlinson wanted to know the identity of the specific individual to whom he could look for the purpose of enforcing the prior order to remove the Hogan[`s] Heroes sign. Respondent was an active principal in Black Moon, the corporate entity which owned the bar/restaurant. By clear and convincing evidence, the Florida Bar has established Respondent knew Mr. Mahoney was not the person then in charge of the daily operations. Indeed, he had not been regularly associated with the business since approximately August, 1992 when Mr. Kaiserian took over in his place and stead.
Regardless of whether Mr. Ross required $3002 or $4000 to settle the contempt issue in reference to the sign, Respondent made inaccurate representations to him concerning his having sufficient settlement funds in his trust account as of August 6, 1993. According to Respondent's testimony, the settlement funds actually came from the net proceeds realized upon the sale of the business in late 1993 or early 1994. Such false representation is clearly in violation of the rules of Professional Conduct.
By clear and convincing evidence the Florida Bar has proven Respondent did not have the agreement of Mr. Ross to submit to Judge Beauchamp the orders of July 28, 1994, which orders vacated the contempt order of Judge [T]omlinson dated September 9, 1993. The hearing before Judge Beauchamp on August 25, 1994 established beyond any reasonable doubt the strong objection of Mr. Ross to the orders submitted by Respondent. There is neither justification for, nor excusal of, this type of conduct. Respondent was wrong ab initio in this respect. In addition, Respondent's letter of July 8, 1993 to Mr. Kaiserian declaring Judge Tomlinson required the payment of $4,000 to the client of Mr. Ross was wrong. At best, all Judge Tomlinson offered was the view he had no further interest in the contempt proceedings against the restaurant if the parties litigant resolved their differences. In no fashion could such offer from the bench be fairly construed in the manner Respondent presented the issue to Mr. Kaiserian.
A referee's findings of fact regarding guilt carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record. Florida Bar v. Vannier, 498 So.2d 896, 898 (Fla.1986). In this case, respondent is not contending that the record does not constitute competent, substantial evidence to support the referee's findings on all three counts. We therefore uphold the referee's findings of fact.
In his recommendation as to discipline, the referee stated in relevant part:
In the highly mobile world in which we live, members of the Bar frequently appear before [judges] to whom the attorneys are strangers. Lacking the insight based upon frequent professional and personal contact with a particular attorney, judges are left with no alternative but to assume a licensed attorney will be candid and responsible when dealing with the Court. Absent such trust, the interests of the principals to the litigation are likely to suffer. It is this underlying premise which most certainly is the basis upon which the Rules of Professional Responsibility are predicated. In the instant matter, there appears to have been a substantial departure from accepted professional conduct on the part of Respondent.
Having made this statement, however, the referee recommended that respondent be placed on probation for one year, take a refresher course in ethics for attorneys, and pay the costs of the proceedings. After our initial review, we remanded the disciplinary recommendation to the referee to hold a hearing on sanctions; to consider evidence of aggravation or mitigation offered by the Bar *728 or respondent; to provide in a supplemental report his findings as to aggravation or mitigation including any prior misconduct by respondent, and to advise the Court as to whether there was any change in his recommendations as to sanctions. The referee then heard supplemental arguments and submitted a second recommendation expressly addressing sanctions. The second disciplinary recommendation was very similar to the first, which was that respondent be placed on probation for one year on each count with the terms of probation to be served concurrently. He also recommended that respondent be required to complete an ethics course, to file quarterly reports with the Bar advising his progress with the ethics course and any business dealings with any clients, and to pay $4,481.57 in costs for the disciplinary proceedings.
Our scope of review over disciplinary recommendations is broader than that afforded to findings of fact because it is our responsibility to order the appropriate discipline. Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989). We have of course recognized that a referee's recommendation of discipline is to be afforded deference unless the recommendation is clearly erroneous or not supported by the evidence. Florida Bar v. Niles, 644 So.2d 504, 506-507 (Fla.1994). However, here we do find that the recommendation of discipline is clearly erroneous.
Florida Standard for Imposing Lawyer Sanctions 6.12 states that suspension is appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld and takes no remedial action. For the very reasons stated by the referee, courts rely upon the candor of attorneys. In this case, we find a pattern of knowing misrepresentations to the court. We find that respondent's conduct warrants a suspension.
The Bar asserts that the appropriate discipline is a ninety-one-day suspension. In supporting its argument for a ninety-one-day suspension, the Bar cites Florida Bar v. Myers, 581 So.2d 128 (Fla.1991), in which the court imposed a ninety-day suspension for respondent's misconduct, which included submitting a settlement agreement to the court in a divorce case without informing the court that the spouse had retained counsel and that the child custody agreement respondent submitted was contrary to the divorcing couple's most recent agreement. The Bar argues that respondent's misconduct falls somewhere between the severity of the misrepresentation in Myers and the severity of other respondents' misrepresentations in cases in which we imposed one-year suspensions. See Florida Bar v. Winderman, 614 So.2d 484 (Fla.1993); Florida Bar v. Broida, 574 So.2d 83 (Fla.1991); Florida Bar v. Rood, 569 So.2d 750 (Fla.1990). The Bar contends that respondent's three misrepresentations, taken as a whole, are more egregious than the misrepresentation in Myers. Therefore, the Bar argues, a ninety-one day suspension is appropriate because that sanction would require respondent to prove rehabilitation in order to be reinstated to the practice of law.
Upon our examination of the record, while we conclude that there is not a basis for accepting the referee's disciplinary recommendation of probation, we do not believe that respondent's conduct is as egregious as the conduct in Myers which brought about the ninety-day suspension. Rather, we believe that a thirty-day suspension is the appropriate sanction in this case. In deciding to impose thirty days rather than ninety-one days, we are influenced by the fact that there has been no showing of any prior disciplinary infractions by respondent and by the fact that the referee recommended probation. Respondent is hereby suspended from the practice of law in this state for a period of thirty days. This suspension shall be effective thirty days from the filing of this opinion, thereby giving respondent time to take the necessary steps to protect his clients. If respondent notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Respondent shall accept no new business from the date this opinion is filed until the suspension is completed. We also order respondent to successfully complete the Bar's Practice and Professionalism Enhancement Program within *729 six months of the date this opinion becomes final. If respondent fails to successfully complete the course within six months, respondent shall be suspended at the expiration of the six-month period until the course is successfully completed. We assess against respondent the costs of this proceeding, which the referee found to be $4,481.57, for which sum let execution issue. Respondent shall not be reinstated until the costs are paid or until the Bar agrees in writing to a payment plan.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.