780 So.2d 1 (2001)
THE FLORIDA BAR, Complainant,
v.
Dewey Homer VARNER, Respondent.
No. SC96743.
Supreme Court of Florida.
February 15, 2001.
*2 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Division Director, Tallahassee, FL; and David M. Barnovitz, Bar Counsel, Fort Lauderdale, FL, for Complainant.
Michael J. McNerney of Brinkley, McNerney, Morgan, Solomon & Tatum, LLP, Fort Lauderdale, FL, for Respondent.
PER CURIAM.
The Florida Bar has petitioned for review of a referee's report addressing alleged ethical misconduct by attorney Dewey Homer Varner. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons expressed below, we approve in part and disapprove in part the referee's recommendations as to guilt, and suspend Varner from the practice of law for ninety days.

FACTS
The Bar filed a complaint against Varner alleging violations of nine Rules Regulating the Florida Bar in connection with his settlement of a personal injury claim. Following a hearing, the appointed referee made the following factual findings:
Varner represented a client in a personal injury matter. During the client's deposition, Varner represented to Ed Welch of State Farm, the client's insurer, that Varner had filed suit against State Farm on the client's behalf. At the time Varner made this statement, he believed it to be true. Following the deposition, Varner offered to settle with State Farm for $200 in attorneys' fees and $215 in filing fees. Welch agreed to the settlement on behalf of State Farm.
State Farm forwarded a $415 check to Varner, along with a letter requesting that Varner furnish State Farm with a notice of voluntary dismissal as to the suit that had been filed. Varner requested his secretary to prepare a notice of voluntary dismissal. Varner's secretary prepared the notice, but informed Varner that she had been unable to fill in a file number because no such action had been commenced. Varner took the notice, filled in a fictitious file number, signed it, and mailed a copy to Welch at State Farm. At the time Varner forwarded the notice of voluntary dismissal to State Farm, there had been no summons, complaint or other pleadings drafted or prepared in the case.
For placing a fictitious file number on the notice of voluntary dismissal and forwarding the same to State Farm, the referee recommended that Varner be found guilty of violating rule 3-4.3 (lawyer shall not engage in any act that is contrary to honesty and justice) and rule 4-8.4(c) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation). The referee recommended that Varner be found not guilty of the remaining rule violations charged by the Bar.
In determining the recommended discipline, the referee found no aggravating factors. In mitigation, the referee found that Varner made a good faith effort at restitution and correcting the consequences of his misconduct, see Fla. Stds. Imposing Law. Sancs. 9.32(d), that Varner had a good character and reputation, see Fla. Stds. Imposing Law. Sancs. 9.32(g), and that Varner was remorseful. See Fla. Stds. Imposing Law. Sancs. 9.32(l).
The referee recommended that Varner be suspended for thirty days. The Bar now seeks review of the referee's recommendation of not guilty as to rules 4-1.4(a), 4-8.4(b), 4-8.4(d), 4-5.3(b), and 4-5.3(c)(1); the referee's finding of no aggravating factors; and the referee's recommended discipline.

*3 GUILT ANALYSIS

The Bar challenges several of the referee's recommendations as to guilt. In order to successfully challenge a referee's recommendation of not guilty as to a particular rule violation, the Bar must demonstrate that there is no evidence in the record to support the recommendation, or that the referee's recommendation is clearly contradicted by the evidence. See Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996). Although we give deference to a referee's recommendations as to guilt, we find that several of the referee's recommendations are clearly contradicted by the evidence.

A. Rule 4-4.1(a)
The Bar argues that Varner knowingly made a false statement of material fact by submitting the fictitious notice of voluntary dismissal to Welch, and therefore the referee erred in recommending that Varner be found not guilty of violating rule 4-4.1(a) (knowingly making false statement of material fact). We agree, because the referee's recommendation of not guilty as to rule 4-4.1(a) is contradicted by the evidence. Rule 4-4.1(a) provides that in the course of representing a client, "a lawyer shall not knowingly make a false statement of material fact or law to a third person." Although the referee found that Varner believed a suit had been filed at the time he made the verbal representation to Welch that a suit had been filed, the referee also found that Varner knew a suit had not been filed when he mailed Welch the notice of voluntary dismissal with a fictitious case number.
A document has been held to constitute a "statement" for the purposes of rule 4-4.1(a). See Florida Bar v. Adams, 641 So.2d 399 (Fla.1994) (letter from attorney accusing another attorney of suborning perjury basis for violation of rule 4-4.1(a)). This document contained a false statement of fact in that the case number was nonexistent, and also implied other falsehoods: that a lawsuit had been filed and that the lawsuit was now being voluntarily dismissed. The false statements in the document were material in that they were in furtherance of a falsehood that State Farm relied upon in settling the matter. By sending the notice to Welch, Varner knowingly made a false statement of material fact, and we therefore disapprove the referee's recommendation and find Varner guilty of violating rule 4-4.1(a).

B. Rule 4-8.4(b)
The Bar also contends that the referee erred in recommending that Varner be found not guilty of violating rule 4-8.4(b). Rule 4-8.4(b) provides that a lawyer shall not commit a criminal act[1] that "reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." The Bar argues that Varner's submission of the fictitious notice violated section 817.234(1)(a)1-2, Florida Statutes (Supp.1998).[2] This section provides:
Any person who, with the intent to injure, defraud, or deceive any insurer:
1. Presents or causes to be presented any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy, knowing such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim
2. Prepares or makes any written or oral statement that is intended to be *4 presented to any insurer in connection with, or in support of, any claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim... commits a felony of the third degree....
§ 817.234(1)(a)1-2, Fla. Stat. (Supp 1998). Although it is arguable whether Varner violated subsection one, in that at the time the fictitious notice was sent the "claim" had already been paid, see § 817.234(1)(a)1 (prohibiting presenting any false statement "as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy") (emphasis added), we find it unnecessary to resolve this question because we agree with the Bar that a violation of subsection two of the statute is clear. Section 817.234(1)(a)2 provides that any person who, with the intent to deceive an insurer, "[p]repares or makes any written... statement that is intended to be presented to any insurer in connection with, or in support of, any claim for payment or other benefit pursuant to an insurance policy" is guilty of violating the statute. Under the facts as found by the referee, it is clear that the fictitious notice was sent with an intent to deceive an insurer "in connection with" a claim for payment, and that such act constitutes a violation of section 817.234(1)(a)2.[3] We therefore disapprove the referee's recommendation and find Varner guilty of violating rule 4-8.4(b).

C. Rule 4-8.4(d)
The Bar contends that Varner should have been found guilty of violating rule 4-8.4(d) (conduct prejudicial to the administration of justice), because the fictitious notice invoked the power and prestige of the court in order to further the deception. We agree. One need not be involved in a judicial proceeding to engage in conduct prejudicial to the administration of justice. See Florida Bar v. Machin, 635 So.2d 938, 939-40 (Fla.1994) ("While conduct that actually affects a given proceeding may be prejudicial to the administration of justice, conduct that prejudices our system of justice as a whole also is encompassed in rule 4-8.4(d)."). Varner attempted to conceal his initial mistake in representing to State Farm that a lawsuit had been filed by creating a fictitious court document that was cloaked with the aura of authenticity. Such misuse of official documents is conduct prejudicial to the administration of justice, see, e.g., Florida Bar v. Cox, 718 So.2d 788, 793 (Fla.1998) (lawyer violated rule 4-8.4(d) by creating, signing, and mailing various false documents), as it diminishes the public trust in the reliability of such documents. Since it is not disputed that Varner did indeed execute and mail the fictitious notice, we disapprove the referee's recommendation and find Varner guilty of violating rule 4-8.4(d).[4]

*5 DISCIPLINE ANALYSIS

The Bar challenges the referee's recommended sanction of a thirty-day suspension, arguing instead that a ninety-one day suspension is more appropriate under the circumstances at issue.[5] Although a referee's recommendation as to discipline is persuasive, "we do not pay the same deference to this recommendation as we do to the guilt recommendation because this Court has the ultimate responsibility to determine the appropriate sanction." Florida Bar v. Sweeney, 730 So.2d 1269, 1272 (Fla.1998). Although we generally will not "second-guess" a referee's recommended discipline if the recommendation has a "reasonable basis in existing caselaw," Florida Bar v. Lecznar, 690 So.2d 1284, 1288 (Fla.1997), we find that in light of the duties violated in this case a thirty-day suspension lacks such support.
The referee did not cite to any cases in support of the recommended thirty-day suspension; however, Varner cites Florida Bar v. Kravitz, 694 So.2d 725 (Fla.1997) (thirty-day suspension imposed where lawyer misrepresented to client's employee that he would be arrested if he failed to pay attorney money and made several misrepresentations to court and opposing counsel), and Florida Bar v. Rose, 607 So.2d 394 (Fla.1992) (imposing thirty-day suspension where lawyer misrepresented information to financial institution to obtain his children's money from a trust without ex-wife's authorization), in support of the referee's recommendation. Notably, however, these cases did not involve the commission of a criminal act or the use of court documents as a means to deceive others. These cases do not provide a reasonable basis for approving the referee's recommended sanction.
However, the cases relied upon by the Bar as supporting a ninety-one-day suspension are likewise distinguishable from the instant case. The Bar likens this case to fraud cases in which this Court imposed disbarment. See Florida Bar v. Cramer, 678 So.2d 1278 (Fla.1996) (attorney with prior disciplinary record was disbarred for making fraudulent representations to lenders and failing to respond to the Bar's inquiry); Florida Bar v. Forbes, 596 So.2d 1051 (Fla.1992) (lawyer disbarred following felony conviction for bank fraud and making materially false statements in obtaining loans). As discussed, the basis for finding Varner guilty of violating rule 4-8.4(b) was that the conduct at issue involved an attempt to deceive, not an intent to defraud. Thus, the fraud cases relied upon by the Bar are distinguishable.
We find Florida Bar v. Morse, 587 So.2d 1120 (Fla.1991), instructive in this case. In Morse, the attorney represented a client in a personal injury matter and rejected a settlement on the client's behalf. However, the attorney then failed to file suit against the insurance carrier and the statute of limitations ran. When the attorney discovered the error, his law partner, Morse, called the client and indicated that the insurance carrier refused to go above the offered settlement amount, and issued a check to the client in the amount of the settlement offer. This Court ordered a ninety-day suspension, based in part on the fact that Morse did not inform the client "of the true outcome of his personal injury claim or of the fact that the firm had committed possible malpractice by letting the statute of limitations run, nor did he advise the client to seek other legal counsel, as a conflict of interest had arisen." Morse, 587 So.2d at 1121.
Although the facts of Morse differ slightly from the instant case, we find the most troubling aspect of Morse is present here: an error is made in the representation of a client, but instead of the error being admitted, an attorney develops a deception to cover up the error so that it will go undetected. Varner's error in representing *6 that a suit had been filed was pardonable and correctable upon his learning that such a suit had not in fact been filed. However, Varner, like Morse, instead chose to keep this truth to himself and hatched a scheme to conceal the error. Varner's decision to go forward with a deception rather than honestly admitting to his mistake is so contrary to the most basic requirement of candor that we cannot countenance a short-term suspension in this instance. Instead, we impose a ninety-day suspension, consistent with this Court's sanction in Morse.

CONCLUSION
Dewey Homer Varner is hereby suspended from the practice of law for ninety days. The suspension will be effective thirty days from the filing of this opinion so that Varner can close out his practice and protect the interests of existing clients. If Varner notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Varner shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment for costs in the amount of $1,217.87 is entered against Varner and in favor of The Florida Bar, 650 Apalachee Parkway, Tallahassee, FL 32399, for which sum let execution issue.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] It is not necessary for the attorney to have been convicted or even charged with violation of the criminal statute in question. See R. Regulating Fla. Bar 3-4.4 (disciplinary action based on a criminal offense may be initiated regardless of whether the respondent has been tried, acquitted, or convicted for the alleged criminal offense).
[2] This is the version of the statute in effect on January 27, 1999, when Varner submitted the fictitious notice. A violation of this statute is classified as a third-degree felony.
[3] In concluding that Varner's actions violated section 817.234(1)(a)2 for the purposes of this attorney discipline proceeding we expressly make no comment as to Varner's criminal culpability, if any, because in the attorney discipline process proof must only be clear and convincing, whereas in the criminal context such proof must be beyond a reasonable doubt.
[4] The Bar also challenges the referee's recommendation of not guilty as to rule 4-5.3(b) (lawyer shall make reasonable efforts to ensure that nonlawyer's conduct is compatible with professional obligations of a lawyer); and rule 4-5.3(c)(1) (lawyer shall be responsible for nonlawyer's conduct if lawyer orders or ratifies the conduct involved). However, at the close of the Bar's case as to the rule violations, Varner moved for an involuntary dismissal of these rule violations, and the Bar indicated that it "would stipulate that it has not established those violations." In light of the Bar's apparent stipulation that these violations were not proven, coupled with the referee's lack of any factual findings as to these alleged rule violations, we decline to address the Bar's claims here and approve the remainder of the referee's factual findings and recommendations as to guilt without discussion.
[5] The Bar additionally challenges the referee's finding of no aggravating factors. However, in light of our disposition as to discipline, we decline to address this issue and approve the referee's findings as to aggravating and mitigating factors.