992 So.2d 224 (2008)
THE FLORIDA BAR, Complainant,
v.
Dewey Homer VARNER, Jr., Respondent.
No. SC06-1919.
Supreme Court of Florida.
September 25, 2008.
*226 Kenneth Lawrence Marvin, Director of Lawyer Regulation, The Florida Bar, Tallahassee, Florida, and Lorraine Christine Hoffmann, Bar Counsel, The Florida Bar, Fort Lauderdale, FL, for Complainant.
Kevin P. Tynan of Richardson and Tynan, PLC, Tamarac, FL, for Respondent.
PER CURIAM.
We review a referee's report recommending that Respondent, Dewey Homer Varner, Jr., be found guilty of professional misconduct and be suspended from the practice of law for ninety-one days. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons expressed below, we approve the referee's findings of fact and recommendations as to guilt, but reject the referee's recommended discipline. The serious and cumulative nature of Varner's misconduct warrants a one-year suspension.

FACTS
The Florida Bar filed a three-count complaint against Varner alleging numerous violations of the Rules Regulating the Florida Bar. Following a formal hearing, the referee filed a report containing the following findings:
Varner has been a member of The Florida Bar since October 25, 1974. In The Florida Bar File No.1987-26,200, Varner received a private reprimand for advertising violations. In Florida Bar v. Varner, 780 So.2d 1 (Fla.2001), he received a ninety-day suspension for filing a fictitious notice of voluntary dismissal.
In February 2000, a client hired the law firm of Varner & Thorne, P.A. to represent him in connection with two workers compensation accidents. Initially, Patricia Thorne, Varner's law partner, took primary responsibility for the client's files, but in November 2000 transferred the files to Varner due to medical issues. Varner never informed the client that his cases were no longer being handled by Thorne.
In August 2003, opposing counsel had scheduled and noticed a physician's deposition. Upon receiving the notice, Varner telephoned opposing counsel and requested that the deposition be cancelled. Opposing counsel stated that she would agree to cancel the physician's deposition if Varner voluntarily dismissed the case. Varner filed a notice of voluntary dismissal of one of the client's claims. Varner directed a copy of the notice of voluntary dismissal to be faxed to opposing counsel.
The notice of voluntary dismissal stated that the client, through his legal counsel, sought the voluntary dismissal of all pending claims in his workers compensation case. Varner intended to communicate that the client was aware of and consented to the dismissal of this case. Varner knew, however, that the client did not know of it and had not authorized it.
Before the referee, Varner falsely testified that Thorne expressly communicated the client's authorization to file the notice of voluntary dismissal. This was untrue, as Thorne did not communicate the client's permission to file the voluntary dismissal to Varner at any time. In fact, Thorne did not receive the client's authorization and did not know of the filing of the notice of voluntary dismissal until she received a letter from the client nearly a year later telling her so.
The motion to voluntarily dismiss the client's case was granted, and opposing counsel cancelled the scheduled deposition.
Varner never told the client that the notice of voluntary dismissal had been filed or that his case had been dismissed. After Varner had voluntarily dismissed the case, the client called the firm several times *227 inquiring about his case. Varner failed to respond. It was not until June 2004 when a sympathetic member of Varner's law firm support staff surreptitiously revealed it to the clientthat the client learned that his case had been dismissed. The client then called the court himself and officially learned of the dismissal.
Neither Varner nor anyone else from his law firm had ever informed the client that the law firm of Varner & Thorne had stopped representing him. Neither Varner nor anyone else from his law firm ever returned the client's file or took any steps to protect his interests after his case was dismissed. Moreover, before filing the motion to dismiss, Varner never considered or reviewed the applicable statute of limitations and therefore did not know that, absent extraordinary remedies, the voluntary dismissal would deprive the client of his cause of action. After discovering that his case had been voluntarily dismissed, the client had significant difficulty in reopening his case, as the statute of limitations had run.
The referee recommended that Varner be found guilty of violating several Rules Regulating the Florida Bar: 3-4.2 (violation of the Rules of Professional Conduct is a cause for discipline); 3-4.3 (the commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney's relations as an attorney or otherwise, whether committed within or outside the state of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline); 4-1.1 (a lawyer shall provide competent representation to a client); 4-1.2(a) (a lawyer shall abide by a client's decisions concerning the objectives of representation, and shall consult with the client as to the means by which they are to be pursued); 4-1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); 4-1.16(d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that has not been earned); 4-3.2 (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client); 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another); 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice).
The referee found the following aggravating factors: (1) prior disciplinary offenses; (2) dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple offenses; and (5) substantial experience in the practice of law. The referee also found mitigating factors of (1) personal or emotional problems and (2) character or reputation.
As to discipline, the referee recommends a ninety-one-day suspension. Further, the referee awarded costs to the Bar in the amount of $8,074.94.
Varner seeks review of the recommendations as to both guilt and the recommended discipline.

ANALYSIS
Varner appeals several of the referee's factual findings as well as the recommended discipline. We first address the *228 factual findings and then discuss the appropriate discipline.

A. The Referee's Factual Findings
Varner primarily argues that the referee's findings that Varner failed to abide by the client's decisions and that he engaged in dishonesty, fraud, deceit, or misrepresentation are not supported by competent, substantial evidence. That is, Varner challenges the referee's findings that Thorne had little control over the client's case and that no conversation occurred between Varner and Thorne about the client's consent to file a notice of voluntary dismissal. Varner argues that he relied on Thorne's assertions that the client consented to the voluntary dismissal.
This Court's review of a referee's factual findings is limited to determining whether they are supported by competent, substantial evidence. This Court will not reweigh the evidence and substitute its judgment for that of the referee. Fla. Bar v. Frederick, 756 So.2d 79, 86 (Fla.2000); see also Fla. Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998). A respondent contesting factual findings cannot simply point to contradictory evidence when competent, substantial evidence supports the findings. Fla. Bar v. Committe, 916 So.2d 741 (Fla. 2005); Fla. Bar v. Nowacki, 697 So.2d 828, 832 (Fla.1997).
Varner primarily argues that evidence contradicts the referee's findings and that he relied on Thorne's alleged assertions. The referee, however, who observed Varner's demeanor, found incredible Varner's testimony that he relied on Thorne's assertions and found that Varner filed the notice of voluntary dismissal even though he knew that the client had not authorized it. The referee's decision to discount Varner's testimony is supported by competent, substantial evidence in that: (1) all witnesses, including Varner, testified to Thorne's compromised mental health and general inability to function as a lawyer during the period in question; (2) opposing counsel testified that Varner and his associates handled the client's case because Thorne had "mental difficulties"; and (3) successor counsel testified that the client told him that Varner had been handling his case because Thorne "had been away." Further, although there was evidence that the client communicated with Thorne in August 2003, there is no evidence that this communication was related to the voluntary dismissal; in fact, Thorne testified she was attempting to reconnect with her clients because Varner had stopped referring new clients to her and was attempting to redirect her existing files to other attorneys.[1]
In addition, opposing counsel testified that: (1) in the same telephone conversation in which Varner sought to continue a deposition and trial, he told opposing counsel that he would take a voluntary dismissal; and (2) opposing counsel was soon thereafter faxed a notice of voluntary dismissal. Based on the limited time in which Varner could have secured consent and the evidence that Thorne was generally unavailable, the testimony from opposing counsel supports a finding that no client contact was made.
Moreover, Varner stated that from May 2003 onward, including the time he filed the notice of voluntary dismissal, he did not trust Thorne because she had previously filed a false pleading. Thus, it is suspicious at best that Varner would rely on information from Thorne when he knew about her compromised mental health and did not trust her. Hence, even if Thorne *229 did discuss the client's consent with Varner, he knew such information was untrustworthy. It is undisputed that the client did not authorize the filing of the notice of voluntary dismissal. The referee's finding that Varner failed to abide by his client's decisions and engaged in conduct involving dishonesty, deceit, fraud, or misrepresentation is supported by competent, substantial evidence. We approve these factual findings and recommendations as to guilt for rules 4-1.2(a) and 4-8.4(c).
Varner also challenges the referee's conclusion that he violated rule 4-1.1 by failing to competently represent his client. However, it is clear that Varner failed to consider that the applicable statute of limitations had run on the voluntarily dismissed claim. These conclusions are supported by testimony from both opposing counsel and successor counsel, who testified about Varner's mishandling of the client's case.[2] We approve this finding and recommendation.
Additionally, Varner challenges the referee's conclusion that he violated rule 4-3.2 by failing to make reasonable efforts to expedite litigation. In contrast to this assertion, the record demonstrates that the merits hearing for the dismissed claim would have occurred just eleven days after the notice of voluntary dismissal was served. In light of the fact that the statute of limitations had run, dismissing the claim significantly postponed its resolution; the case had to be reopened extraordinarily and settled much later by successor counsel. Accordingly, we approve this finding and recommendation.
Varner further challenges the referee's conclusion that he violated rule 4-1.4(b) by failing to adequately communicate with his client. Varner has admitted, however, to having no communication with his client and, as noted above, the referee found, based on competent, substantial evidence, that Varner did not rely on any assertion made by Thorne. We therefore approve this finding and recommendation.
Next, Varner challenges the referee's conclusion that he is guilty of violating rule 4-1.16(d) by failing to provide successor counsel with a copy of the client's file. Thorne testified that, after her professional association with Varner dissolved, she took the client's case with her and continued to work on the case until she was discharged. Thorne also testified that due to tumultuous events before the dissolution,[3] Varner withheld files from her and, for this reason, she did not believe that she was able to deliver the complete file to successor counsel. Successor counsel confirmed Thorne's statements. Accordingly, competent, substantial evidence supports the referee's conclusion. We approve this finding and recommendation.
Varner also challenges the referee's findings as to aggravating and mitigating factors. A referee's finding as to aggravation and mitigation carries a presumption of correctness and will not be disturbed unless clearly erroneous or without *230 support in the record. Fla. Bar v. Arcia, 848 So.2d 296 (Fla.2003). First, Varner argues that the following aggravating factors should not have been found because he acted upon information received from Thorne and he was not inappropriately motivated to file the notice of voluntary dismissal: (1) dishonest or selfish motive; (2) pattern of misconduct; and (3) multiple offenses. However, as pointed out above, the referee discredited Varner's testimony regarding his alleged conversation with Thorne. Thus, the record supports these aggravating factors.
Second, Varner challenges the referee's decision not to find the following mitigating factors: (1) full cooperation with the Bar; (2) remoteness of a prior disciplinary matter; and (3) unreasonable delay in disciplinary proceeding. A referee's decision not to find that a mitigating or aggravating factor applies also carries a presumption of correctness and will not be disturbed unless clearly erroneous or without support in the record. See Fla. Bar v. Morse, 784 So.2d 414, 415-16 (Fla.2001); Fla. Bar v. Bustamante, 662 So.2d 687, 687 (Fla.1995).
Competent, substantial evidence supports the referee's decision not to find the mitigating factors proffered by Varner. As to the first, full cooperation with the Bar, the referee actually found that Varner falsely testified under oath in the hearing in this case; such cannot be considered full cooperation. As to the second, it is true that Varner's prior disciplinary history is somewhat remote and that remoteness of prior offenses may be used as a mitigating factor. See Fla. Stds. Imposing Law. Sancs. 9.32(m); see also id. 9.22(a) (remote instances of minor misconduct, which is not the case here, shall not be considered as an aggravating factor). However, the facts of Varner's most recent disciplinary case are very similar to that of the present case. In Florida Bar v. Varner, 780 So.2d 1 (Fla.2001), the Court found that Varner knowingly made a false statement of material fact in creating a fictitious notice of voluntary dismissal. Due to the striking similarity to the present case, the referee properly concluded that the remoteness of Varner's prior disciplinary history did not mitigate Varner's misconduct in the present case.
As to the third, although it has taken some time for this case to proceed, Varner did not previously object to the length of time it has taken to process the present case. In fact, counsel for Varner twice, on the referee's behalf, filed motions for extension of time to submit the report of referee. Further, grievances were filed against both Varner and Thorne, and it understandably took the Bar additional time to complete its investigation. Thus, there is no basis to find that Varner's misconduct was mitigated by any unreasonable delay.

B. The Referee's Recommended Discipline
Finally, Varner challenges the referee's recommendation as to discipline and argues that he should only receive a public reprimand. The Bar argues that the referee's recommendation of a ninety-one day suspension should remain intact. We disagree with both parties and with the referee and conclude that a one-year suspension is the appropriate sanction for Varner's misconduct.
In reviewing a referee's recommended discipline, the Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. Generally *231 speaking, however, the Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). Further, the Court views cumulative misconduct more seriously than an isolated instance of misconduct. Fla. Bar v. Carlon, 820 So.2d 891, 899 (Fla. 2002).
The most analogous case is, not surprisingly, Varner's previous disciplinary case, Florida Bar v. Varner, 780 So.2d 1. In that case, Varner represented a personal injury client and mistakenly misrepresented to the insurer that he had filed suit against it on behalf of his client. At the time the statement was made, Varner believed it to be true. The insurer agreed to settle the case and mailed a check to Varner along with a letter requesting that Varner provide a notice of voluntary dismissal. There having never been a case, Varner directed his secretary to prepare a notice of voluntary dismissal with a fictitious case number, signed it, and mailed a copy of it to the insurer. The referee found no aggravating factors, and also found that Varner's misconduct was mitigated by remorse and a good faith effort at restitution. We suspended Varner for ninety days. In so doing, we stated that the most troublesome aspect of the case was Varner's deliberate deception where
an error is made in the representation of a client, but instead of the error being admitted, an attorney develops a deception to cover up the error so that it will go undetected.... Varner ... chose to keep this truth to himself and hatched a scheme to conceal the error. Varner's decision to go forward with a deception rather than honestly admitting to his mistake is so contrary to the most basic requirement of candor that we cannot countenance a short-term suspension in this instance.
Id. at 5-6.
The present case demonstrates that Varner has not learned from his previous mistakes and has continued his deceptive practices. Varner still fails to grasp the concept of honesty. In fact, before the referee, in an attempt to blame his former law partner, who was suffering from compromised mental health at the time of the events, Varner testified falsely.
Further, Varner's present misdeeds are more egregious than those in his previous case and warrant a rehabilitative suspension. A significant fact in this case is that, unlike the previous case, Varner's actions seriously affected a client. Here, Varner acted without his client's consent; caused, through his lack of competence, the client to nearly abandon an entire cause of action; and filed a false pleading in the workers compensation case. Standard 4.42(a) states that suspension is appropriate when "a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client." (Emphasis added.) The potential for client injury was great because when Varner filed the notice of voluntary dismissal, the statute of limitations had run, causing the dismissal to effectively be with prejudice. Although the client was later allowed to reopen his case, that result was far from guaranteed.
Although we agree with the referee's recommendation that Varner's misconduct warrants a rehabilitative suspension, we disagree with the recommendation of a ninety-one day suspension. The profession of the practice of law requires lawyers to be honest, competent, and diligent in their dealings with clients, other lawyers, and courts. Clients expect no less from their lawyers and place great trust in lawyers in their times of need. Lawyers trust each other to accurately *232 represent their clients' interests and courts trust lawyers to do the same. Varner has broken these basic trusts that all lawyers must maintain.
We have imposed a one-year suspension where the lawyer has violated similar duties to the client. In Florida Bar v. Broome, 932 So.2d 1036 (Fla.2006), the respondent engaged in multiple instances of client neglect, inadequate communication, contempt, excessive fees, an instance of misrepresentation, and a failure to respond to the Bar's investigation. In one of those instances, Broome waived a criminal defendant's speedy trial rights without his knowledge or consent and later failed to forward that defendant's file to successor counsel. In imposing the one-year suspension, however, we noted that the respondent's misconduct might have warranted disbarment if not for the substantial mitigation presented in that case, which included a finding that the respondent was clinically depressed at the time the incidents transpired and had no prior disciplinary history.
Here, no compelling mitigating evidence exists. That Varner engaged in only one act of client neglect and misrepresentation, and that he did not charge excessive fees, suggests only that his misconduct warrants something less than disbarment. See also Fla. Bar v. Glueck, 985 So.2d 1052 (Fla.2008) (disbarring lawyer for, among other things, multiple acts of client neglect). In light of the gravity of the type of misconduct committed and the cumulative nature of Varner's misconduct, we conclude that the appropriate discipline is a one-year suspension.

CONCLUSION
Dewey Homer Varner, Jr., is hereby suspended for one year.
The suspension will be effective thirty days from the filing of this opinion so that Varner can close out his practice and protect the interests of existing clients. If he notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately.
Dewey Homer Varner, Jr., shall accept no new business from the date this opinion is filed until he is reinstated.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Dewey Homer Varner, Jr., in the amount of $8,074.94, for which sum let execution issue.
It is so ordered.
QUINCE, C.J., WELLS, ANSTEAD, PARIENTE, LEWIS, BELL, JJ., and CANTERO, Senior Justice, concur.
NOTES
[1] Varner also argues that the referee improperly limited cross-examination of Thorne. However, the record is clear that there was no such limitation.
[2] Varner argues that one of the reasons he filed the notice of voluntary dismissal was because he believed that the client was attempting to perpetrate a fraud. However, if Varner believed this to be the case and was unable to counsel the client to voluntarily dismiss the claim, the more provident course would have been for him to withdraw from the representation.
[3] Thorne testified that Varner called the police on her and "the last couple of nights that [she] was there, [Varner] hired a security guard to keep [her] locked in [her] end of the office."