PER CURIAM.
 

 We have for review a referee’s report regarding alleged ethical breaches by John Vernon Head. We have jurisdiction.
 
 See
 
 art. V, § 15, Fla. Const. For the reasons
 
 *3
 
 discussed herein, we disapprove the referee’s recommended sanction of a sixty-day suspension and instead impose a one-year suspension.
 

 FACTS
 

 The Florida Bar filed a complaint against Head alleging that he engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation; knowingly made a false statement of material fact or law to a third person in the course of representing a client; engaged in acts in connection with the practice of law that were prejudicial to the administration of justice; knowingly made a false statement of material fact or law to a tribunal; and represented a client when Head’s exercise of independent professional judgment might be materially limited by his own interests. After holding a hearing, the referee issued a report in which he made the following findings and recommendations.
 

 Clayton Hackney and Linda Hackney, a married couple, filed a petition for bankruptcy under chapter 13 of the Bankruptcy Code in an attempt to retain ownership of real property that was their primary asset. They had purchased the land from George Turner, who held a mortgage on the property. The relationship between the Hackneys and Turner became acrimonious. Ultimately, Turner obtained a Final Judgment of Foreclosure against the Hackneys in February 2008. The principal amount of the judgment was $142,000, which carried interest. The Hackneys also owed Turner attorney fees of $15,375.58.
 

 In March 2003, the Hackneys retained attorney Ezra Witsman to represent them in the bankruptcy. The Hackneys paid Witsman $1500 and also agreed to pay an hourly rate pursuant to a signed fee agreement.
 

 Thereafter, Head purchased Witsman’s law practice. He filed “motions for substitution” on behalf of a number of Witsman’s former clients, including the Hackneys. Head took over the bankruptcy case in August 2003. He never received any additional fees for the bankruptcy from the Hackneys.
 

 During the course of the bankruptcy, the Hackneys had other legal matters. They owned stock in a corporation, Crown Tree Tech, a tree trimming service. The business was their principal source of income. One of Crown Tree Tech’s former employees filed a federal lawsuit on a wage and hour claim against the corporation and the Hackneys. Head agreed to represent Crown Tree Tech and the Hackneys. The corporation provided Head $1000 as a cost retainer for the case. Further, the corporation paid Head a $1000 cost retainer to represent Clayton Hackney when he was charged with nonpayment of child support. Head also represented Clayton on an unrelated felony charge, in which Turner claimed Clayton tried to run him over while driving a Crown Tree Tech motor vehicle. Head did not wish to represent Clayton on the felony charge. However, when no one else would take the case because of Clayton’s inability to pay a retainer, Head agreed to represent Clayton. Ultimately, Head was able to finalize these matters by a payment of money on the wage claim and without Hackney being incarcerated for either the child support or criminal matter. Head, who was not paid any additional money by the Hackneys, determined that he was owed $14,013.69 in attorney fees for these “non-bankruptcy matters.”
 

 The bankruptcy was continuing and the Hackneys were under a repayment plan. However, the repayment plan would not pay off the obligation to Turner. Therefore, the Hackneys had to obtain refinanc
 
 *4
 
 ing of the property to acquire funds to pay off the mortgage. In 2005, a lender was located. The closing on this transaction and its aftermath are when Head engaged in misconduct.
 

 The Hackneys had spoken with Head’s office about using money from the proceeds of the loan to pay Head for the enormous amount of work he had performed. Specifically, a payment of $10,000 was discussed, although the Hackneys had not agreed to that amount. On the day of the closing, the Hackneys called Head’s office to question a $10,000 figure that was to be paid to Head from the proceeds of the closing. Eventually the Hackneys signed the closing documents, Head received a check for $10,000, and Turner received a check for $143,184.82. The closing took place on May 28, 2005, and the proceeds were distributed on June 7, 2005. Head’s payment was based on an invoice that had no information about hours worked, hourly rate, or what work was performed.
 

 The original HUD Settlement Statement does not show the $10,000 payment. Instead, it states Turner received $153,184.82. An Amended HUD-1 statement was prepared that shows the $10,000 payment to Head, but apparently that statement was not provided to anyone.
 

 A determination of what was owed to Turner in the refinancing was difficult because the Hackneys were often late with their payments in the chapter 13 proceeding, and Turner refused to cooperate in establishing what was owed to him. The burden fell on Head’s office to determine the amount owed to Turner and to provide the figure to the closing agent. The closing agent went forward with the closing without any confirmation from Turner as to the total amount owed. There was no evidence explaining why this was done or why there were two different HUD statements.
 

 It is crucial to recognize that the primary reason the Hackneys were refinancing the property was to cease having Turner as a creditor. The $10,000 payment to Head from the loan proceeds prevented the achievement of this goal. The Hackneys still owed Turner money.
 

 A few months later, on September 2, 2005, Head filed a Second Amended Motion to Modify Confirmed Chapter 13 Plan with the bankruptcy court on behalf of the Hackneys. The motion stated Turner’s claims had been paid in full. Attached to the motion was a “payoff worksheet” — a single page that showed attorney fees of $8999 in the payoff, but it is obvious that these were shown as attorney fees owed to Turner that were part of the total payoff.
 

 Even though the proceeds from the real estate closing were distributed in June 2005, Head did not inform the bankruptcy court that he received the $10,000 until January 24, 2006, at a hearing before that court. At that point, an evaluation of the HUD Settlement Agreement and the Turner disbursement check brought the discrepancy to light. By stipulation of the parties at the January 24, 2006, hearing, it was determined that Turner was still owed $7200.
 

 Because the
 
 second, amended
 
 motion to modify the confirmed chapter 13 plan showed that only $143,184.82 had been disbursed to Turner, the referee found that Head had not attempted to mislead the court. In addition, Head thought he was not obligated to disclose the receipt of this money because it was for matters unrelated to the bankruptcy.
 

 According to the transcript from a bankruptcy hearing on March 7, 2006, even the bankruptcy judge was initially unsure whether Head should have reported the
 
 *5
 
 fees. Thereafter, by motion, the trustee sought disgorgement of the $10,000. A hearing was held on the motion and an order was entered that had findings of fact. The bankruptcy court’s found as follows: (1) Head’s statements in the pleadings were disingenuous; (2) his request for and receipt of the $10,000 disbursement was intentional and contrary to his statutory and ethical duties as counsel for the debtors; his receipt of the disbursement created a conflict of interest between him and the debtors that disqualified him from continuing to represent them; and (3) Head violated fundamental Bankruptcy Code and rule provisions governing the conduct of attorneys, and his actions created irreconcilable differences with his clients.
 

 The bankruptcy court concluded as follows: (1) Head received $2000 from the debtors directly and $10,000 from the closing of the refinancing; (2) Head was required to disclose receipt of these funds and failed to make such disclosure in violation of 11 U.S.C.A. § 329 (2004) and Federal Bankruptcy Rule 2016; and (3) Head had not been candid with the bankruptcy court.
 

 Head filed a motion for reconsideration. The bankruptcy court granted the motion to the extent that it reduced the amount ordered to be disgorged from $12,000 to $10,000.
 

 On February 20, 2007, Head filed a “Suggestion of Bankruptcy” for the firm of John Vernon Head, P.A. in the Hackney bankruptcy file. However, Head did not file a petition for bankruptcy for the firm. Thus, the bankruptcy court entered an order to show cause against Head for filing the Suggestion of Bankruptcy when no petition for bankruptcy was ever filed. A hearing was held and an order entered. The bankruptcy court found that (1) “Head certified in filing the Suggestion his firm had filed a bankruptcy case and the automatic stay provisions of U.S.C. Section 362(a) had been invoked. Those certifications were not true”; and (2) “Head falsely represented his firm had filed for bankruptcy protection and the automatic stay was in effect. He willfully abused the judicial process by filing the Suggestion. He violated Rule 4-3.3 of the Florida Rules of Professional Conduct and Rule 9.011(b).” The bankruptcy court sanctioned Head by prohibiting him from practicing before the bankruptcy court for ninety days.
 

 The referee found that Head violated Rule of Professional Conduct 4-1.7(b) of the Rules Regulating the Florida Bar (2003) (prior to the May 22, 2006, amendment). Head represented a client when his exercise of independent professional judgment was materially limited by his own interests. Head knew his clients owed him a large sum of money that they were unable to pay unless they used the receipts from the refinancing. By accepting the $10,000 from the refinancing, Head prevented his clients from being able to completely pay off their primary creditor, Turner. It was ultimately stipulated that the Hackneys owed Turner $7200 more than the $143,184.82 Turner had received from the closing. The $10,000 Head received would have covered the $7200, as well as the clients’ primary objective, which was paying off the money owed to Turner.
 

 The referee also found that Head violated Rule of Professional Conduct 4-3.1 (after the May 22, 2006, amendment) (bringing or defending a proceeding, or asserting or controverting an issue therein, when there is no basis in law or fact for doing so that is not frivolous). Head knowingly filed a Suggestion of Bankruptcy with the bankruptcy court when no petition for bankruptcy had been filed. The bankrupt
 
 *6
 
 cy court sanctioned him for this misconduct by prohibiting him from practicing before that court for ninety days. Upon these same facts, the referee found Head guilty of Rule of Professional Conduct violating 4 — 3.3(a)(1) (knowingly making a false statement of material fact or law to a tribunal).
 

 Next, the referee found Head guilty of violating Rule of Professional Conduct 4-4.1(a)(knowingly making a false statement of material fact or law to a third person in the course of representing a client). Head filed the Suggestion of Bankruptcy when no petition had been filed. He filed it while the trustee was attempting to enforce the court’s disgorgement order, which was then final.
 

 Head was also found guilty of violating Rule of Professional Conduct 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Head misrepresented to the bankruptcy court that a petition for bankruptcy had been or would be filed.
 

 The referee found Head guilty of violating rule 4-8.4(d) (engaging in conduct in connection with the practice of law that is prejudicial to the administration of justice). Head was not forthcoming as to his receipt of the $10,000 from the refinancing. As a result, unnecessary hearings were held to determine the sums due to Turner. Further, Head’s filing of the suggestion, when no petition for bankruptcy was actually filed, caused additional unnecessary proceedings before the court.
 

 As to discipline, the referee recommended a sixty-day suspension. Because the Bar prevailed in this case, the referee recommended that the Bar be awarded costs of $9,222.80. With regard to aggravating factors, the referee found that Head has prior disciplinary offenses
 
 [1]
 
 and substantial experience in the practice of law.
 
 [2]
 
 The referee found the mitigating factors of timely good faith effort to make restitution (Head paid the $10,000 after judgment was entered) and character or reputation.
 

 The Florida Bar sought review of the referee’s recommended sanction, and Head filed a cross-petition for review in which he challenges several aspects of the referee’s report.
 

 ANALYSIS
 

 First, Head asserts that the referee should have granted his motion to dismiss. The standard for review of a referee’s ruling on a motion is whether the referee abused his or her discretion.
 
 Fla. Bar v. Rotstein,
 
 835 So.2d 241 (Fla.2002);
 
 Fla. Bar v. Kandekore,
 
 766 So.2d 1004 (Fla.2000).
 

 Head claims that the Bar’s complaint did not have a “structure” and did not link the alleged facts with the rules allegedly violated. On that basis, he argues that the referee should have granted his motion to dismiss. This argument is without merit. Rule Regulating the Florida Bar 3-7.6(h)(1)(C) provides that the “complaint shall set forth the particular act or acts of conduct for which the attorney is sought to be disciplined.” Our review of the complaint found that the alleged facts are clearly presented. Also, the penultimate paragraph in the complaint specifically
 
 *7
 
 lists the rules that Head allegedly violated, including language explaining each rule. Thus, Head was informed of the facts in dispute and the rules alleged to have been violated, and he was able to formulate a response.
 
 See Fla. Bar v. Tipler,
 
 8 So.3d 1109, 1118 (Fla.2009)(“Due process is satisfied in Bar disciplinary proceedings where the attorney is served with notice of the Bar’s charges and is afforded an opportunity in the disciplinary hearing to be heard and defend himself’). We conclude that the referee did not abuse his discretion by permitting the case to proceed.
 

 Second, Head argues that the referee’s findings of fact are not supported by competent, substantial evidence in the record. He claims that the referee should not have relied on facts found by the bankruptcy court when the referee examined whether Head engaged in misconduct.
 

 The Court’s standard of review for evaluating a referee’s factual findings is as follows: This Court’s review of such matters is limited, and if a referee’s findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee.
 
 Fla. Bar v. Frederick,
 
 756 So.2d 79, 86 (Fla.2000);
 
 see also Fla. Bar v. Jordan,
 
 705 So.2d 1387, 1390 (Fla.1998). To successfully challenge a referee’s factual findings, a party must show there is a lack of evidence in the record to support such findings or that the record clearly contradicts the referee’s conclusions; this burden cannot be met merely by pointing to contradictory evidence when there is substantial competent evidence in the record supporting the referee’s findings.
 
 Fla. Bar v. Glueck,
 
 985 So.2d 1052, 1056 (Fla.2008).
 

 Head claims that the referee should not have relied on the facts established in the bankruptcy proceeding. The disciplinary record contains a “Judicial Notice Notebook,” which contains fifty-four documents from the bankruptcy court proceedings. The notebook includes a “Motion for the Court to Take Judicial Notice” that the Bar submitted to the referee. The motion states that “[djuring the case management conference conducted on April 2, 2008, the respondent stipulated that the documents obtained from the bankruptcy court file are true and correct copies.” Further, section 90.202(6), Florida Statutes (2009), provides that a court may take judicial notice of the “[rjecords of any court of this state or of any court of record of the United States or of any state, territory, or jurisdiction of the United States.” The Bar asked the referee to take judicial notice of the bankruptcy court documents and orders. Thus, Head was given notice of the request and had an opportunity to challenge the documents. In fact, he acknowledged that the records were true and correct copies. In light of these circumstances, we conclude that the referee did not abuse his discretion in accepting these documents into the record and then relying on the documents and decisions from the bankruptcy court.
 
 See Fla. Bar v. Tobkin,
 
 944 So.2d 219 (Fla.2006) (referee’s consideration of the facts included in a district court of appeal’s opinion for the underlying medical malpractice case, in which the district court of appeal held that the respondent’s actions before the trial court were contumacious and willfully disobedient, was proper; the statute governing matters that have to be judicially noticed states that a court has to take judicial notice of decisional law, and the opinion in the medical malpractice case constituted decisional law).
 

 Further, it is well established that in bar disciplinary proceedings, the referee is permitted to consider all relevant information pertaining to the alleged mis
 
 *8
 
 conduct.
 
 See id.
 
 at 224 (“Because Bar disciplinary proceedings are quasi-judicial rather than civil or criminal, the referee is not bound by the technical rules of evidence. Consequently, a referee has wide latitude to admit or exclude evidence, and may consider any relevant evidence, including hearsay and the trial transcript or judgment in a civil proceeding.”). Contrary to Head’s arguments, the referee was permitted to consider the bankruptcy court documents and rely on them as support for the disciplinary findings of fact.
 

 Head also challenges the referee’s findings of fact by basically asserting that the referee should have believed him instead of relying on the bankruptcy court documents. The Court has a long-established and clear standard regarding a referee’s credibility findings: The Court defers to the referee’s assessment and resolution of conflicting testimony because the referee is in the best position to judge the credibility of the witnesses.
 
 Fla. Bar v. Batista,
 
 846 So.2d 479 (Fla.2003). The referee did not find Head believable on these points. Further, Head cannot prevail on review, when contesting the referee’s findings of fact, merely by continuing to restate his arguments. A respondent cannot prevail on review by contesting factual findings and simply pointing to contradictory evidence, when competent, substantial evidence (such as the bankruptcy documents and orders) supports the referee’s findings.
 
 Fla. Bar v. Varner,
 
 992 So.2d 224, 228 (Fla.2008). In addition, the referee thoroughly supported his findings with competent, substantial evidence by over twenty citations to documents in the record, discussing the stipulations entered into by the parties, scrutinizing the testimony of witnesses, quoting and examining the findings from the bankruptcy court orders, and quoting the transcript from the bankruptcy court hearings. We conclude that Head has failed to meet his burden of proving that the referee’s findings of fact are not supported by the record.
 

 Third, the Bar challenges the referee’s recommended sanction of a sixty-day suspension, arguing that a three-year suspension is appropriate. In response, Head argues that he should not be sanctioned severely because his misconduct was minor and he did not have the intent to misrepresent anything.
 

 In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is the Court’s responsibility to order the appropriate sanction.
 
 See Fla. Bar v. Anderson,
 
 538 So.2d 852, 854 (Fla.1989);
 
 see also
 
 art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions.
 
 See Fla. Bar v. Temmer,
 
 753 So.2d 555, 558 (Fla.1999).
 

 Head argues that his misconduct was “minor.” Contrary to his perspective, the Court does not view violations of rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) and rule 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice) as minor. The Court has clearly stated that “basic, fundamental dishonesty ... is a serious flaw, which cannot be tolerated” because dishonesty and a lack of candor “cannot be tolerated by a profession that relies on the truthfulness of its members.”
 
 Fla. Bar v. Rotstein,
 
 835 So.2d 241, 246 (Fla.2002). Dishonest conduct demonstrates the utmost disrespect for the court
 
 *9
 
 and is destructive to the legal system as a whole.
 

 Head also claims that he lacked intent to engage in the misconduct. Contrary to this argument, the referee agreed with the bankruptcy court’s finding that Head’s “request for and receipt of the $10,000 disbursement was intentional and contrary to his statutory and ethical duties as counsel for the debtors.” Further, it is well established in disciplinary case law that “in order to satisfy the element of intent it must only be shown that the conduct was deliberate or knowing.”
 
 Fla. Bar v. Fredericks,
 
 731 So.2d 1249, 1252 (Fla.1999) (the motive behind the respondent’s action was not the determinative factor; rather, the issue was whether the respondent deliberately or knowingly engaged in the activity in question);
 
 see also Fla. Bar v. Brown,
 
 905 So.2d 76, 81 (Fla.2005);
 
 Fla. Bar v. Barley,
 
 831 So.2d 163, 169 (Fla.2002). The referee and bankruptcy court found that Head deliberately and knowingly requested $10,000 from the debtors’ refinancing and deliberately and knowingly filed the misleading Suggestion of Bankruptcy. We conclude that the element of intent has been proven and found.
 

 The Bar argues that a three-year suspension is appropriate. The cases cited by the Bar present more egregious misconduct than that committed by Head.
 
 See Fla. Bar v. Dove,
 
 985 So.2d 1001 (Fla.2008) (suspending the respondent for three years for knowingly making material misrepresentations to a court in a termination of parental rights and adoption matter, and for willfully withholding material information from the court, which impacted a child, and caused adverse effects on the legal proceedings and the interested parties);
 
 Fla. Bar v. Hagendorf,
 
 921 So.2d 611 (Fla.2006) (suspending the respondent for two years for using the legal system to seek revenge on his business landlord, which included making misrepresentations to a court and seeking to quiet title to a building that he did not own).
 

 Head’s violations of rules 4-8.4(e) and (d) establish that a serious sanction is merited.
 
 See, e.g., Fla. Bar v. Colclough,
 
 561 So.2d 1147 (Fla.1990) (suspending the respondent, who did not have any prior disciplinary history, for six months for misrepresenting to the judge and opposing counsel that a hearing on costs had already been held). Head knowingly filed the Suggestion of Bankruptcy with the bankruptcy court, even though no petition for bankruptcy had been filed. He also was not forthcoming about his receipt of the $10,000 from the refinance loan.
 

 Further, Head knew his clients were unable to pay his fee unless they used money from the refinancing loan. In accepting the $10,000 from the refinancing, he knew his clients would be unable to pay off their primary creditor, Turner. Paying Turner in full had been the main objective for the refinancing loan. Thus, Head’s action created a conflict of interest that proved detrimental to his clients.
 
 See
 
 R. Regulating Fla. Bar 4 — 1.7(b) (prohibiting a lawyer from representing a client when the lawyer’s exercise of independent professional judgment may be materially limited by the lawyer’s own interests).
 

 In light of Head’s misconduct,
 
 Florida Bar v. Varner,
 
 992 So.2d 224 (Fla.2008), provides guidance. The respondent in
 
 Varner
 
 permitted a voluntary dismissal of his client’s case by lying and stating that the client, through legal counsel, sought the voluntary dismissal of all pending claims in his workers compensation case. The respondent deliberately intended to communicate that the client was aware of and consented to the dismissal of the case; however, the respondent knew that the client did not know of it and had not authorized it. Varner, like Head, violated
 
 *10
 
 rules 4-8.4(e) and (d). The Court suspended Varner for one year.
 

 Head, like Varner, made a misrepresentation to a court and to others (Varner lied to opposing counsel when he stated that his client dismissed the case; Head’s actions were done to mislead the bankruptcy trustee). In
 
 Varner,
 
 the Court stated that the “profession of the practice of law requires lawyers to be honest, competent, and diligent in their dealings with clients, other lawyers, and courts.”
 
 Id.
 
 at 231. Head has not met this requirement.
 

 Further, Varner deliberately misled his client because, for almost a year, Varner did not inform the client that he had allowed the dismissal of the case. Head engaged in a similar act of self-interest, by obtaining a portion of the refinancing loan money and placing his own clients at a disadvantage by rendering them unable to pay off Turner. Also like Varner, Head was previously disciplined for similar misconduct. Head was admonished in 2005 for bringing a lawsuit that was “lacking in merit” and “frivolous,” which is similar to his filing the Suggestion of Bankruptcy in this case. The Court views cumulative misconduct more seriously than an isolated instance of misconduct.
 
 Fla. Bar v. Carlon,
 
 820 So.2d 891, 899 (Fla.2002). Thus, based on
 
 Varner,
 
 we find that the referee’s recommendation of a sixty-day suspension is unsupported and we impose a one-year suspension.
 

 Fourth, Head claims that the referee’s award of costs to the Bar was improper. He broadly asserts that “the costs sought by the Bar are essentially unnecessary and were compiled by it without reason and Respondent should not be held responsible for them.”
 

 Rule Regulating the Florida Bar 3-7.6(q)(2) provides that the referee “shall have discretion to award costs and, absent an abuse of discretion, the referee’s award shall not be reversed.” Further, rule 3-7.6(q)(3) provides that the referee may assess the Bar’s costs against a respondent when the Bar is “successful, in whole or in part.” The referee here found Head guilty of several rule violations, so the Bar was successful in part. Thus, the referee’s award of costs is supported.
 

 Further, the costs listed in the Bar’s Affidavit of Costs are permitted under rule 3-7.6(q). Head cannot overcome the referee’s award of costs by broadly claiming, without providing any specifics or support, that the costs are “unnecessary” or “without reason.” He has not provided any evidence that the costs “were unnecessary, excessive, or improperly authenticated.” R. Regulating Fla. Bar 3-7.6(q)(3);
 
 see Fla. Bar v. Kassier,
 
 730 So.2d 1273, 1276 (Fla.1998). Thus, Head has failed to show that the referee abused his discretion in recommending that costs be awarded to the Bar.
 

 As the Court has stated, “[w]here the choice is between imposing costs on a bar member who has misbehaved and imposing them on the rest of the members who have not misbehaved, it is only fair to tax the costs against the misbehaving member.”
 
 Kassier,
 
 730 So.2d at 1276. We conclude that the referee’s award of costs to the Bar was proper.
 

 CONCLUSION
 

 Accordingly, we approve the referee’s findings of fact, recommendations as to guilt, and award of costs. We disapprove the referee’s recommendation of a sixty-day suspension. Instead, John Vernon Head is hereby suspended from the practice of law for one year and thereafter until he proves rehabilitation.
 

 This suspension will be effective thirty days from the filing of this opinion so that
 
 *11
 
 John Vernon Head can close out his practice and protect the interests of existing clients. If Head notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Head shall accept no new business from the date this opinion is filed until he is reinstated to the practice of law in Florida.
 

 Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 82399-2300, for recovery of costs from John Vernon Head in the amount of $9,222.80, for which sum let execution issue.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . Head received an admonishment for minor misconduct in August 2005. The basis of the admonishment was a finding that Head "had no reasonable basis to pursue the litigation, and that the respondent had intentionally, while without malice, filed and presented claims that lacked any plausible, legal or factual support." The lawsuit was "lacking in merit” and "frivolous."
 

 [2]
 

 . Head has been a practicing attorney for thirty-five years, including practice in other jurisdictions.