# Supreme Court of Florida

_____

No. SC11-1106
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**DAVID LEONARD ROSS,**
Respondent.

[May 29, 2014]

PER CURIAM.

We have for review a referee's report recommending that Respondent David Leonard Ross be found guilty of professional misconduct.[1]  The referee recommended a sanction of a six-month suspension.  We approve the referee's findings of fact and recommendations of guilt; however, we disapprove the referee's recommended sanction.  Based on case law and the Florida Standards for Imposing Lawyer Sanctions, we conclude that the appropriate sanction is a three-year suspension.

_____

1.  We have jurisdiction.  <u>See</u> art. V, § 15, Fla. Const.

1

# BACKGROUND

The Florida Bar filed a two-count complaint against Respondent David Leonard Ross alleging that he engaged in several acts of misconduct. A referee was appointed to hold hearings and provide a report to the Court. In the report, the referee made the following findings of fact and recommendations.

Respondent is a resident of California and a member of The Florida Bar, subject to the jurisdiction and Disciplinary Rules of the Supreme Court of Florida. He is licensed to practice law in Florida and in the United States District Court for the Central District of California, but not licensed to practice in California state courts.

Count I—Client's Retainer. On or about February 3, 2006, Respondent was retained to represent a client in an administrative proceeding. The client was subject to a potential suspension from her employment due to a reprimand she had received at work. She signed a retainer agreement with Respondent. He was paid a $10,000 retainer from which Respondent would be paid based upon billing at an hourly rate.

Respondent filed a response in that administrative proceeding on May 1, 2006, and requested a hearing. However, shortly before the hearing scheduled in June 2006, the client resigned from her position. She immediately informed Respondent's office that his services were no longer required as she was now

2

pursuing an EEOC claim. She requested an accounting and a final bill from Respondent's office. No response was ever received.

In addition, on at least four occasions between February 2007 and May 2007, the client requested an accounting, a final billing, and that Respondent close her account. The client received a brief e-mail response from Respondent, but she never received a response to her request for a final billing.

On January 22, 2008, the client's subsequent attorney, Mr. Phillips, sent a certified letter, return receipt requested, to Respondent, again requesting a final accounting and demanding the return of the remaining retainer. Respondent signed the return receipt form, but did not respond to Phillips's request. On April 18, 2008, the client sent Respondent an e-mail in which she stated that it had been over twenty months since she first requested the final billing statement and the closing of her account. By e-mail, Respondent replied that he thought his paralegal had resolved the problem and that he would "speak with [the paralegal] on Wednesday." After a week passed with no response, the client informed Respondent that she had not heard from anyone in his office, and requested that he call her the next day. However, despite the ongoing efforts to contact Respondent, neither the client nor Phillips received a response until Respondent sent Phillips an e-mail on September 26, 2008. In that message, Respondent stated that he had moved offices, his previous firm had dissolved, and "although not technically

3

obligated," he would send a check for $5,000 at the end of the following week. The client and Phillips did not receive anything from Respondent.

On November 30, 2009, the client filed a complaint with The Florida Bar. On December 15, 2009, Respondent sent her a cashier's check for $5,000, but he never provided her with a final billing or accounting for the money withheld.

Count II—Forged a Signature on a Court Filing. Respondent was involved in an acrimonious family matter in California regarding his elderly aunt, who was a recent widow, and numerous relatives, including his aunt's great-nephew named Rubin, who was serving as a co-trustee of the aunt's trust. Respondent believed Rubin was abusing his aunt both physically and financially.

In September 2009, Respondent filed a legal action in the United States District Court for the Central District of California against the conservator and trustees of his aunt's trust, which included Rubin. He filed the action on behalf of himself and four other relatives. Respondent listed himself as appearing "per pro" and the attorney for the other four relatives was listed as an attorney named Waddington. However, Respondent had actually forged Waddington's signature in the legal papers. Although Waddington later stated that he would have been willing to represent the relatives after meeting with them and obtaining a retainer agreement, he had never given Respondent permission to represent to the court that

4

Waddington was attorney of record at the time of filing the complaint or permission to sign Waddington's name.

The United States District Court issued an Order to Show Cause and scheduled a hearing on the issues for October 5, 2009. At that hearing, the court entered an order dismissing the action in its entirety for being improperly filed with the unauthorized and forged signature of Waddington, which had falsely placed Waddington as attorney of record. The court continued the hearing on the Order to Show Cause for further proceedings against Respondent. Thereafter, at a subsequent hearing on the issues in December 2009, the court found Respondent in contempt for filing the complaint with a forged signature, and ordered him to pay sanctions to the court of $5,000 and attorneys' fees for Waddington and defense counsel. Respondent filed an appeal in the Ninth Circuit Court of Appeals but the appeal was dismissed for failure to file an opening brief.

Recommendations as to Guilt and Discipline. The referee recommends that the Court find Respondent guilty of violating Bar rules 4-1.4 (communication with client); 4-1.16(a)(3) (when lawyer must decline or terminate representation); 4-3.3(a)(1) (knowingly making a false statement of fact or law to a tribunal); 4-8.4(a) (violating or attempting to violate the Rules of Professional Conduct); 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and 4-8.4(d) (conduct prejudicial to the administration of justice).

With regard to aggravating factors, the referee found: (1) prior disciplinary offenses—a thirty-day suspension imposed in 2001; and (2) substantial experience in the practice of law—Respondent was admitted to practice in 1982. In mitigation, the referee found: (1) absence of a dishonest or selfish motive; (2) imposition of other penalties or sanctions; and (3) remorse.

The referee recommends that the Court suspend Respondent for six months from the practice of law in Florida. In addition, the referee recommended that The Florida Bar be awarded costs in the amount of $1,785.66.

On Review. Respondent sought review before this Court. He argues that the referee should have given more weight to the three mitigating factors. Next, he challenges the referee's recommended sanction of a six-month suspension. Respondent claims that the referee's recommended sanction is too severe and not supported by case law. Finally, Respondent asserts that the referee adopted the draft report provided by the Bar and thereby violated his due process rights.

**ANALYSIS**

First, Respondent argues that the events surrounding his misconduct, which include the pressure he was under from his family to assist his elderly aunt, demonstrate that the referee should have given more weight to the three mitigating factors when recommending the sanction. Respondent claims that the referee's report does not provide sufficient facts regarding the family situation that existed

6

when he filed the complaint with the forged signature. In contrast to Respondent's assertions, the Report of Referee clearly states that Respondent was involved in an extremely distasteful family matter involving his elderly aunt, who was a recent widow, and numerous relatives including Rubin. Further, the referee states that Respondent believed Rubin was abusing the aunt both physically and financially. Thus, the referee provided the relevant information in his report for this Court's consideration.

Despite the referee's sufficient findings of fact, which are supported by the record, Respondent attempts to add his version of the facts to explain his misconduct of forging the signature of attorney Waddington on the complaint. Respondent's description of the facts goes far beyond the facts found by the referee. A party cannot meet its burden by simply pointing to contradictory evidence when there is also competent, substantial evidence in the record to support the referee's findings. Fla. Bar v. Committe, 916 So. 2d 741, 746 (Fla. 2005); Fla. Bar v. Nowacki, 697 So. 2d 828, 832 (Fla. 1997).

Here, the referee found: (1) absence of a dishonest or selfish motive; (2) imposition of other penalties or sanctions; and (3) remorse. See Fla. Stds. Imposing Law. Sancs. 9.32 (b), (k), and (l). Before this Court, Respondent seeks to bolster the weight of these mitigating factors by providing more detail regarding the underlying events. However, the referee found the mitigating factors based on

7

the same underlying events and gave them substantial weight. The referee examined the lengthy suspensions in case law and then recommended a lenient suspension of six months. Accordingly, Respondent has failed to show that these mitigating factors merit additional weight.

Second, Respondent asserts that the referee's recommended sanction of a six-month suspension is not supported by existing case law and the Standards. He claims that the appropriate sanction ranges from a public reprimand to a suspension of less than thirty days. In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So. 2d 852, 854 (Fla. 1989); see also art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So. 2d 555, 558 (Fla. 1999).

Respondent has engaged in serious misconduct. In Count I, he refused to provide the client with an accounting of the funds held on retainer, despite repeated requests from both the ex-client and her new counsel. Also, after the client discharged Respondent, he did not return any of her funds for years, even though she sought return of her funds numerous times. In Count II, Respondent

8

knowingly filed a fraudulent document in court. See Fla. Bar v. Kickliter, 559 So. 2d 1123 (Fla. 1990) (respondent disbarred for forging his client's signature on a will when the client had died without signing the document). "Generally, the Court has imposed harsh punishment on lawyers who intentionally lie under oath, lie to the court, or present false or forged documents." Fla. Bar v. Klausner, 721 So. 2d 720, 721 (Fla. 1998) (attorney suspended for three years for filing fraudulent documents in court) (emphasis added). Not only did Respondent file a document with a forged signature in a court, he sought to make Waddington responsible for representation of the four family members. At the time, Waddington had not agreed to representation and was unaware of the filing. Forging the signature of an attorney in a legal action is not only unacceptable, it is outrageous. If lawyers and the public cannot rely upon the authenticity of legal papers, the very foundation of our legal system becomes fractured and unsustainable. This is not a simple mistake or negligent conduct, this was an intentional grievous act.

Based on these facts, the referee recommends that Respondent be found guilty of violating six Bar rules. Three of those Bar rules address dishonest conduct, which are Bar rules 4-3.3(a)(1) (knowingly making a false statement of fact or law to a tribunal); 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and 4-8.4(d) (conduct prejudicial to the

administration of justice). Respondent has engaged in severely dishonest conduct. He knowingly filed a document that was fraudulent by forging the signature of another attorney on that document. Thus, he intentionally made a false statement of fact to a tribunal because his complaint indicated that Waddington was representing the four relatives (violation of Bar rule 4-3.3(a)(1)). This also constitutes conduct involving dishonesty, fraud, deceit, or misrepresentation because he was dishonest to opposing counsel (Bar rule 4-8.4(c)) and conduct prejudicial to the administration of justice (Bar rule 4-8.4(d)). The Court has repeatedly stated that "basic fundamental dishonesty . . . is a serious flaw, which cannot be tolerated." Fla. Bar v. Rotstein, 835 So. 2d 241, 246 (Fla. 2002). "Dishonest conduct demonstrates the utmost disrespect for the court and is destructive to the legal system as a whole." Fla. Bar v. Head, 27 So. 3d 1, 8-9 (Fla. 2010). Misrepresentations and dishonesty warrant severe discipline.[2] See Fla. Bar v. Hall, 49 So. 3d 1254 (Fla. 2010) (attorney disbarred for engaging in fraudulent conduct in her personal affairs by recording a forged document in the county court

2. When recommending the sanction, the referee relied upon the Florida Standards for Imposing Lawyer Sanctions. Specifically, the referee relied upon Standards 6.12 "Violations of Duties Owed to the Legal System; False Statements, Fraud, and Misrepresentation," 6.22 "Violations of Duties Owed to the Legal System; Abuse of the Legal Process," and 7.2 "Violations of Other Duties Owed as a Professional," which indicate that the appropriate discipline is a suspension. The referee's application of the Standards is supported by competent, substantial evidence in the record.

10

clerk's office); <u>Fla. Bar v. Vining</u>, 707 So. 2d 670 (Fla. 1998) (imposing a three-year suspension for misrepresentations in a stipulation submitted to the court while seeking funds in the court registry); <u>Fla. Bar v. Cramer</u>, 678 So. 2d 1278 (Fla. 1996) (attorney disbarred for forging another person's signature on forms to lease computer and office equipment as part of a fraudulent scheme); <u>Fla. Bar v. Segal</u>, 663 So. 2d 618 (Fla. 1995) (imposing a three-year suspension for making a false statement in a petition for discharge submitted to probate court); <u>Fla. Bar v. Kleinfeld</u>, 648 So. 2d 698 (Fla. 1994) (imposing a three-year suspension for making false statements in an affidavit seeking disqualification of a judge in a contempt hearing against the attorney, among other things); <u>Fla. Bar v. Solomon</u>, 589 So. 2d 286 (Fla. 1991) (along with other misconduct, respondent disbarred for forging his deceased mother's signature on a homestead tax exemption application and forging both of his deceased parents' signatures on a homestead application).[3] In addition, discipline must protect the public from unethical conduct, must be fair to a respondent yet sufficient to sanction the misconduct and encourage reformation and rehabilitation, <u>and must be severe enough to deter others who</u>

---

3. In contrast to these cases, Respondent relies heavily on <u>Florida Bar v. Kauffman</u>, 498 So. 2d 939 (Fla. 1986), in asserting that a thirty-day suspension is the most severe sanction that should be imposed. In making this argument, Respondent patently fails to acknowledge the facts in his case, and the extent and seriousness of his misconduct.

11

might be prone or tempted to become involved in like violations. See Fla. Bar v. Jasperson, 625 So. 2d 459, 463 (Fla. 1993). Florida lawyers should not and cannot be allowed to forge signatures on legal papers.

Next, despite Respondent's efforts to minimize the misconduct found in Count I, the facts show that he held money belonging to his client for three years and he never provided her with a proper accounting for the $5,000 that he did not return. In approximately June 2006, the client informed Respondent's office that his services were no longer required. She requested an accounting of her $10,000 retainer, a final bill, and a return of the remaining funds. Although there were several communications from the client to Respondent, it was not until after she filed a Bar complaint in November 2009 that Respondent refunded the client's $5,000. She had requested the return of her funds in the summer of 2006, but Respondent did not return the funds until December 2009, which was three years after her initial request. Respondent was extremely neglectful in his duties owed as an attorney. Prompt and competent attention to legal matters is a paramount duty of the legal profession. See Fla. Bar v. Morse, 784 So. 2d 414, 416 (Fla. 2001). Respondent's failure to respond to the client's direction and failure to return her $5,000 for three years, along with his complete failure to provide a proper accounting of the billing of the other $5,000, is grave misconduct. "[E]very legal matter, no matter how small, deserves the diligence and proficiency the

12

public expects from a Florida lawyer." Id.

A lawyer is required to promptly deliver to a client any funds that a client is entitled to receive. In Florida Bar v. Grosso, 760 So. 2d 940 (Fla. 2000), the respondent failed to promptly return property to a client, despite the client's repeated requests. In Grosso, like the current case, "there [was] no allegation of intentional misappropriation of property by respondent. The record reflects that respondent was negligent to the point of incompetence in failing to return his client's property after repeated requests." Grosso, 760 So. 2d at 943. The respondent had been holding property (guns) for his client, while the client was on probation. Id. at 941. Once the client was able to legally resume possession of his guns, he repeatedly asked Grosso to return them. Id. Grosso did not resolve his client's request for approximately eighteen months, for which he received a ninety-day suspension. Id. at 943. The Court noted that "the Florida Standards for Imposing Lawyer Sanctions and the Rules Regulating The Florida Bar make no distinction between client funds and client property in providing discipline for misconduct relating to client 'property' or 'funds and property.' " Id. at 942-43. In comparison to Grosso, Respondent ignored requests by the client's subsequent attorney for an accounting and return of the remaining funds, he did not return any funds to the client for three years (he delayed until after she filed the Bar complaint), he never provided a proper accounting for the $5,000 he kept as

13

payment, and he engaged in the additional misconduct found in Count II.[4]

Further, as the referee noted, Respondent has a disciplinary history. He was previously suspended for thirty days in another disciplinary case. See Fla. Stds. Imposing Law. Sancs. 9.22(a) (prior disciplinary offenses are aggravating factors considered in determining the appropriate discipline).

Accordingly, based upon the case law and Standards, we find that the referee's recommended sanction of a six-month suspension is not supported. We disapprove the referee's recommended discipline and find that the appropriate sanction is a three-year suspension.[5]

---

4. Respondent is unsupported in arguing that the three mitigating factors are sufficient to reduce his egregious acts of misconduct to the sanction of a public reprimand or a thirty-day suspension.

5. Respondent also argues that the referee violated his due process rights by asking The Florida Bar to prepare a draft report of referee. However, Respondent admits that he was informed of the referee's request and Respondent was permitted to submit his edited version of a draft report. Due process in a Bar proceeding is satisfied when an attorney is provided notice and an opportunity to be heard. See Fla. Bar v. Head, 27 So. 3d 1, 7 (Fla. 2010). Moreover, in Florida Bar v. Miller, 863 So. 2d 231 (Fla. 2003), the Court noted that the comment to Canon 3(B)(7) of the Florida Code of Judicial Conduct provides that a "judge may request a party to submit proposed findings of fact and conclusions of law, so long as the other parties are apprised of the request and are given an opportunity to respond to the proposed findings and conclusions." Id. at 235-36. The record indicates that the referee complied with this comment. In addition, the report demonstrates the referee's judicial input because the referee's report found aggravating and mitigating factors and, while the Bar sought a one-year suspension, the referee's report recommended a six-month suspension.

14

## CONCLUSION

Accordingly, we approve the referee's findings of fact and recommendations as to guilt. We disapprove the referee's recommended sanction of a six-month suspension and impose a three-year suspension. The suspension shall be effective thirty days from the filing of this opinion so that Respondent David Leonard Ross can close out his practice and protect the interests of existing clients. If Respondent Ross notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Respondent Ross shall fully comply with Rule Regulating the Florida Bar 3–5.1(h), "Notice to Clients." Further, Respondent Ross shall accept no new business from the date of this opinion until he proves rehabilitation and is reinstated to The Florida Bar.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399–2300, for recovery of costs from Respondent David Leonard Ross in the amount of $1,785.66, for which sum let execution issue.

It is so ordered.

POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur. LABARGA, J., dissents with an opinion in which CANADY, J., concurs.


NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

LABARGA, J., dissenting

The majority opinion aptly describes Respondent's conduct as follows: "Respondent has engaged in serious misconduct." "Respondent's failure to respond to the client's direction and failure to return her $5,000 for three years, along with his complete failure to provide a proper accounting of the other $5,000, is grave misconduct." "Not only did Respondent file a document with a forged signature in a court, he sought to make Waddington responsible for representation of the four family members." "Forging the signature of an attorney in a legal action is not only unacceptable, it is outrageous." "If lawyers and the public cannot rely upon the authenticity of legal papers, the very foundation of our legal system becomes fractured and unsustainable." "This is not a simple mistake or negligent conduct, this was an intentional grievous act." "Respondent has engaged in severely dishonest conduct." Maj. op. at 8-12. I could not agree more with these observations. However, because I agree so strongly with these observations, I dissent from the majority's conclusion that a three-year suspension is an adequate sanction for the egregious misconduct committed by Mr. Ross.

In Count I, for three years, Mr. Ross withheld client funds, avoided client communication, and engaged in delay tactics so as to avoid reimbursing the funds. The egregiousness of Mr. Ross's conduct is found not only in his repeated efforts to evade his client, but in the protracted period of time over which this misconduct

16

occurred. What is more, despite repeated requests, to this day, Mr. Ross has not provided the client with an accounting of the remaining $5000 that he did not reimburse.

In Count II, Mr. Ross forged an attorney's signature on a complaint filed in court. This most serious act of dishonesty simply cannot be excused by his troubles with his family members. This act alone is grounds for disbarment. See Florida Bar v. Kickliter, 559 So. 2d 1123, 1124 (Fla. 1990) (disbarring attorney for forging client's signature on a will and submitting the document for probate, despite the "absence of a dishonest or selfish motive."). The cumulative nature of Mr. Ross's conduct, which led to a finding of six serious violations of the Rules Regulating the Florida Bar, warrants disbarment.

Although a sanction that provides an opportunity for rehabilitation is often an appropriate way to address attorney misconduct, the circumstances of this case militate against such consideration. First, Mr. Ross has been an attorney for more than three decades. Rather than operate as a factor in favor of leniency, his length of experience actually aggravates the nature of his conduct because he cannot rely on inexperience or lack of knowledge as to the high standards held for attorneys. Second, Mr. Ross's disciplinary history reflects a prior thirty-day suspension. See Florida Bar v. Ross, 797 So. 2d 589 (Fla. 2001) (table). Therefore, the conduct for which Mr. Ross is now held to account leaves significant doubt as to any

17

prospect of rehabilitation. Combined with his prior history of disciplinary action, Mr. Ross's unacceptable acts of misconduct lead me to the inescapable conclusion that disbarment is the appropriate remedy. Therefore, I dissent.

CANADY, J., concurs.

Original Proceeding – The Florida Bar

John F. Harkness, Jr., Executive Director, Adria E. Quintela, Staff Counsel, and Allison Carden Sackett, Bar Counsel, The Florida Bar, Tallahassee, Florida,

    for Complainant

Andrew Scott Berman of Young, Berman, Karpf & Gonzalez, P.A., Miami, Florida,

    for Respondent